# *14-3417-CV*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### ELIZABETH CUCINOTTA SORVILLO,
### JANE DOE and MARK EVANGELISTA,

*Plaintiff-Appellant,*

- against -

### ST. FRANCIS PREPARATORY SCHOOL,
### FRANCISCAN BROTHERS OF BROOKLYN,
### BROTHER LEONARD CONWAY, and
### VARIOUS MEMBERS OF THE ST. FRANCIS
### PREPARATORY SCHOOL BOARD OF TRUSTEES,
### WHOSE NAMES ARE CURRENTLY UNKNOWN
### AND THUS DESIGNATED AS "JAMES DOE I-XXX,"

*Defendants-Respondents.*

# APPENDIX

## PAGES A-1 to A-82

**KEVIN T. MULHEARN, P.C.**

60 Dutch Hill Rd., Suite 15
Orangeburg, NY 10962
(845)398-0361
kmulhearn@ktmlaw.net

**BIEDERMANN HOENIG SEMPREVIVO, P.C.**

One Grand Central Place
60 East 42nd Street
New York, NY 10165
(646) 218-7621
philip.semprevivo@lawbhs.com

*Attorneys for Plaintiff-Appellant*     *Attorneys for Defendants-Respondents*

On Appeal from the United States District Court, Eastern District of New York
*SDNY Docket No.: 13-CV-03357(SJ)(MDG)*

# **TABLE OF CONTENTS**

**PAGE**

Civil Docket Sheet,
As of November 30, 2014…………………………….. A-1

Complaint,
Dated June 12, 2013…………………………….... A-8

Defendants' Notice of Motion to Dismiss,
Dated September 27, 2013 ………………………… A-58

Declaration of Philip C. Semprevivo, Jr., Esq.,
Dated September 27, 2013,
In Support of Defendants' Motion to Dismiss
(Exhibits Intentionally Omitted)……………………… A-60

District Court's Memorandum Decision and Order
Granting Defendants' Motion to Dismiss,
Dated August 12, 2014……………………………….. A-63

Judgment, Dated August 15, 2014…………………… A-79

Plaintiff's Notice of Appeal,
Dated September 15, 2014
(Exhibits Intentionally Omitted)……………………… A-80

Certification,
Dated December 1, 2014..……………………………. A-82

# A-1

APPEAL

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:13-cv-03357-SJ-MDG

Sorvillo et al v. St. Francis Preparatory School et al
Assigned to: Judge Sterling Johnson, Jr
Referred to: Magistrate Judge Marilyn D. Go
Cause: 28:1331 Fed. Question

Date Filed: 06/12/2013
Date Terminated: 08/15/2014
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**
**Elizabeth Cucinotta Sorvillo**

represented by **Kevin T. Mulhearn**
60 Dutch Hill Road, Suite 8
Orangeburg, NY 10962
845-398-0361
Fax: 845-398-3836
Email: kmulhearn@ktmlaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Jane Doe**

represented by **Kevin T. Mulhearn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Mark Evangelista**

represented by **Kevin T. Mulhearn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**
**St. Francis Preparatory School**

represented by **Philip C. Semprevivo , Jr.**
Biedermann Hoenig Semprevivo, PC
60 East 42nd Street, Suite 660
New York, NY 10165
646-218-7621
Fax: 646-218-7510
Email: Philip.Semprevivo@lawbhs.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elaine Nancy Chou**
Biedermann Hoenig Semprevivo, a
Professional Corporation
60 East 42nd Street
Ste. 660
New York, NY 10165
646-218-7560
Fax: 646-218-7510
Email: elaine.chou@lawbhs.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Franciscan Brothers of Brooklyn**          represented by    **Philip C. Semprevivo , Jr.**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Elaine Nancy Chou**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**Brother Leonard Conway**                   represented by    **Philip C. Semprevivo , Jr.**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Elaine Nancy Chou**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**Various Members of the St. Francis**
**Preparatory School Board of Trustees**
*whose names are currently unknown and*
*thus designated as James Doe 1-XXX*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/12/2013 | 1 | COMPLAINT against All Defendants Disclosure Statement on Civil Cover Sheet completed -no,, filed by Elizabeth Cucinotta Sorvillo, Mark Evangelista, Jane Doe. (Attachments: # 1 Civil Cover Sheet) (Bowens, Priscilla) (Entered: 06/13/2013) |
| 06/12/2013 | 2 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if** all parties wish to consent. The form may also be accessed at the following |

| | | link:http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.** (Bowens, Priscilla) (Entered: 06/13/2013) |
|---|---|---|
| 06/12/2013 | | FILING FEE: $ 400, receipt number 4653060205 (Bowens, Priscilla) (Entered: 06/13/2013) |
| 06/12/2013 | 3 | Summons Issued as to All Defendants. (Bowens, Priscilla) (Entered: 06/13/2013) |
| 07/22/2013 | 4 | WAIVER OF SERVICE Returned Executed by Elizabeth Cucinotta Sorvillo, Jane Doe. All Defendants. (Mulhearn, Kevin) (Entered: 07/22/2013) |
| 08/06/2013 | 5 | NOTICE of Appearance by Philip C. Semprevivo, Jr on behalf of Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School (aty to be noticed) (Semprevivo, Philip) (Entered: 08/06/2013) |
| 08/06/2013 | 6 | Letter *to Judge Johnson requesting MTD permission* by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School (Semprevivo, Philip) (Entered: 08/06/2013) |
| 08/06/2013 | 7 | NOTICE of Appearance by Elaine Nancy Chou on behalf of Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School (aty to be noticed) (Chou, Elaine) (Entered: 08/06/2013) |
| 08/06/2013 | 8 | NOTICE of Change of email address and firm name and address including tel no. and fax no. by Elaine Nancy Chou (Chou, Elaine) (Entered: 08/06/2013) |
| 08/08/2013 | 9 | Corporate Disclosure Statement by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School (Chou, Elaine) (Entered: 08/08/2013) |
| 08/12/2013 | 10 | Letter *in response to defense counsel's August 5, 2013 letter* by Elizabeth Cucinotta Sorvillo (Mulhearn, Kevin) (Entered: 08/12/2013) |
| 08/16/2013 | | NOTICE of Hearing:Pre Motion Hearing set for 9/4/2013 09:30 AM in Courtroom 6B South before Judge Sterling Johnson Jr. If this assigned date presents a conflict to any party, a request to further adjourn must be made in writing and be filed electronically in a timely manner, as per the Court's individual rules. Before making any request to the Court for an adjournment, the parties are to confer with each other. (Rodriguez, Ana) (Entered: 08/16/2013) |
| 08/21/2013 | 11 | ORDER GOVERNING INITIAL CONFERENCE AND REQUIRED DISCLOSURE: An initial conference will be held in the above-captioned case on September 4, 2013, at 10:00 a.m., before Marilyn D. Go, United States Magistrate Judge. Counsel for plaintiff is responsible for confirming that all necessary participants are aware of this conference. Ordered by Magistrate Judge Marilyn D. Go on 8/21/2013. (Hugh, Lewis) (Entered: 08/21/2013) |
| 08/21/2013 | 12 | ORDER GOVERNING DISCOVERY. Ordered by Magistrate Judge Marilyn D. Go on 8/21/2013. (Hugh, Lewis) (Entered: 08/21/2013) |
| 09/04/2013 | | Minute Entry for Initial Conference held on 9/4/2013, before Magistrate Judge Marilyn D. Go: Appearances by K. Mulhearn for plaintiff; P. Semprevivo for defendant. The parties should engage in expedited discovery on the applicability of Title IX and liability of the Franciscan Bros., with responses provided within 3 |

| | | |
|---|---|---|
| | | weeks. They should discuss settlement prior to the next conference scheduled for 9/16/2013 at 9:30 a.m. (by tel) (Hugh, Lewis) (Entered: 09/05/2013) |
| 09/04/2013 | | Minute Entry for proceedings held before Judge Sterling Johnson, Jr: Case called. Counsel Kevin Mulhearn and Phillip Sempervivo appearing. Pre Motion Conference held on 9/4/2013. Motion schedule set as follows: Defendant's motion is due filed by 9/30/2013. Plaintiff's response is due by 10/14 and a reply, if any, is due filed by 10/21/2013. Status Conference set for 12/12/2013 09:30 AM in Courtroom 6B South before Judge Sterling Johnson Jr. (Court Reporter Lisa Schmid.) (Rodriguez, Ana) (Entered: 09/26/2013) |
| 09/16/2013 | | Minute Entry for Status/Settlement Conference held on 9/16/2013 before Magistrate Judge Marilyn D. Go: Appearances by K. Mulhearn for plaintiff; P. Sempervivo for defendant. Settlement is not possible at this time. A scheduling order will be discussed at the next conference scheduled for 11/5/2013 at 2:00 p.m. (by tel.) Any motion for a stay must be filed by 10/28/13 and opposition papers by 10/30/13. (Hugh, Lewis) (Entered: 09/17/2013) |
| 09/25/2013 | 13 | Letter *seeking an extension of allowable pages for Defs' MOL* by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School (Semprevivo, Philip) (Entered: 09/25/2013) |
| 10/14/2013 | 14 | Letter MOTION for Extension of Time to File Response/Reply *Letter Upon Consent of Defendants, Seeking Modification of Briefing Schedule for Defendants' Motion to Dismiss the Complaint* by Elizabeth Cucinotta Sorvillo. (Mulhearn, Kevin) (Entered: 10/14/2013) |
| 10/17/2013 | 15 | Notice of MOTION for Partial Summary Judgment *Notice of Plaintiffs' Cross-Motion to Convert Defendants' Motion to Dismiss into One for Summary Judgment (and, if necessary, for Leave to File an Amended Complaint), dated October 17, 2013* by Elizabeth Cucinotta Sorvillo. (Mulhearn, Kevin) (Entered: 10/17/2013) |
| 10/18/2013 | | ORDER granting 14 Motion for Extension of Time to File Response/Reply. Ordered by Judge Sterling Johnson, Jr on 10/18/2013. (Qureshi, Rizwan) (Entered: 10/18/2013) |
| 10/29/2013 | 16 | REPLY in Opposition re 15 Notice of MOTION for Partial Summary Judgment *Notice of Plaintiffs' Cross-Motion to Convert Defendants' Motion to Dismiss into One for Summary Judgment (and, if necessary, for Leave to File an Amended Complaint), dated October 17, 2013* , REPLY in Support re 15 Notice of MOTION for Partial Summary Judgment *Notice of Plaintiffs' Cross-Motion to Convert Defendants' Motion to Dismiss into One for Summary Judgment (and, if necessary, for Leave to File an Amended Complaint), dated October 17, 2013* filed by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Certificate of Service for Reply Declaration of Philip C. Semprevivo Jr., # 5 Memorandum in Opposition to Plaintiffs' Cross-Motion and in Further Support of Defendants' Motion to Dismiss, # 6 Certificate of Service for Reply Memo) (Semprevivo, Philip) (Entered: 10/29/2013) |
| 10/29/2013 | 17 | First Motion to Dismiss for Failure to State a Claim *and for Subject Matter Jurisdiction* by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School. (Attachments: # 1 Declaration of Philip C. Semprevivo, Jr., # 2 |

| | | |
|---|---|---|
| | | Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), # 9 Certificate of Service for Notice of Motion, Declaration of Philip C. Semprevivo, Jr., w/Supp Exhs and Memo of Law) (Semprevivo, Philip) (Entered: 10/29/2013) |
| 10/29/2013 | 18 | REPLY in Opposition re 17 First Motion to Dismiss for Failure to State a Claim *and for Subject Matter Jurisdiction*, 15 Notice of MOTION for Partial Summary Judgment *Notice of Plaintiffs' Cross-Motion to Convert Defendants' Motion to Dismiss into One for Summary Judgment (and, if necessary, for Leave to File an Amended Complaint), dated October 17, 2013* filed by Mark Evangelista, Jane Doe, Elizabeth Cucinotta Sorvillo. (Attachments: # 1 Memorandum in Opposition to Defendants' Motion to Dismiss) (Semprevivo, Philip) (Entered: 10/29/2013) |
| 10/29/2013 | 19 | First Motion to Dismiss for Failure to State a Claim *and for Lack of Subject Matter Jurisdiction* by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School. (Semprevivo, Philip) (Entered: 10/29/2013) |
| 10/29/2013 | 20 | REPLY in Opposition re 17 First Motion to Dismiss for Failure to State a Claim *and for Subject Matter Jurisdiction*, 15 Notice of MOTION for Partial Summary Judgment *Notice of Plaintiffs' Cross-Motion to Convert Defendants' Motion to Dismiss into One for Summary Judgment (and, if necessary, for Leave to File an Amended Complaint), dated October 17, 2013*, 19 First Motion to Dismiss for Failure to State a Claim *and for Lack of Subject Matter Jurisdiction* filed by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School. (Semprevivo, Philip) (Entered: 10/29/2013) |
| 11/05/2013 | 21 | Letter *requesting stay of discovery* by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School (Semprevivo, Philip) (Entered: 11/05/2013) |
| 11/05/2013 | | Minute Entry for Scheduling Conference held on 11/5/2013 before Magistrate Judge Marilyn D. Go: Appearances by K. Mulhearn for plaintiffs; P. Semprevivo, Jr. for defendants. Any motion for a stay must be briefed by 11/8/13, opposition by 11/15 and any reply b6 11/19/13. Next conference scheduled for 11/25/2013 at 12:00 p.m. (by tel.) (Hugh, Lewis) (Entered: 11/06/2013) |
| 11/08/2013 | 22 | Letter MOTION to Stay *Discovery* by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School. (Semprevivo, Philip) (Entered: 11/08/2013) |
| 11/15/2013 | 23 | MEMORANDUM in Opposition *Letter Brief in Opposition to Defendants' Request for a Stay of Discovery (Doc. No. 22)* filed by Elizabeth Cucinotta Sorvillo. (Mulhearn, Kevin) (Entered: 11/15/2013) |
| 11/19/2013 | 24 | REPLY to Response to Motion re 22 Letter MOTION to Stay *Discovery* filed by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School. (Semprevivo, Philip) (Entered: 11/19/2013) |
| 11/22/2013 | | SCHEDULING ORDER: The hearing on the 22 Letter MOTION to Stay scheduled for 11/25/13 is canceled and may be rescheduled at a future date should the Court require further discussion. Ordered by Magistrate Judge Marilyn D. Go on 11/22/2013. (Go, Marilyn) (Entered: 11/22/2013) |

| | | |
|---|---|---|
| 12/11/2013 | | SCHEDULING ORDER: The Status Conference set for 12/12/2013 is adjourned to 1/16/2014 09:30 AM in Courtroom 6B South before Judge Sterling Johnson Jr. Ordered by Judge Sterling Johnson, Jr on 12/11/2013. (Rodriguez, Ana) (Entered: 12/11/2013) |
| 01/14/2014 | 25 | Letter *Requesting Status Conf Adjournment* by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School (Semprevivo, Philip) Modified on 1/15/2014 (Rodriguez, Ana). (Entered: 01/14/2014) |
| 01/15/2014 | | ORDER granting 25 Motion to Adjourn Conference. The Status conference set for 1/16/2014 is adjourned to 4/30/2014 @ 9:30 a.m. Ordered by Judge Sterling Johnson, Jr on 1/15/2014. (Rodriguez, Ana) (Entered: 01/15/2014) |
| 01/15/2014 | | Set/Reset Hearings: Status Conference set for 1/16/204 is adjourned to 4/30/2014 09:30 AM in Courtroom 6B South before Judge Sterling Johnson Jr. (Rodriguez, Ana) (Entered: 01/15/2014) |
| 03/18/2014 | 26 | Letter *re Filing Motion for Leave to File a Counterclaim* by Leonard Conway, Franciscan Brothers of Brooklyn, St. Francis Preparatory School (Semprevivo, Philip) (Entered: 03/18/2014) |
| 03/19/2014 | | ORDER re 26 Letter filed by Franciscan Brothers of Brooklyn, Leonard Conway, St. Francis Preparatory School. Plaintiffs are directed to reply to 26 by no later than 5pm on 3/28/2014. Parties are directed to prepare to discuss the same at the conference currently scheduled for 4/30/2014. Ordered by Judge Sterling Johnson, Jr on 3/19/2014. (Droubi, Luna) (Entered: 03/19/2014) |
| 03/28/2014 | 27 | Letter *on behalf of Plaintiff, FELICIA MOORADIAN (f/k/a "JANE DOE"), dated March 28, 2014, in Response to Defendants' March 18, 2014 Letter Requesting Leave to File Defamation Counterclaim* by Jane Doe (Mulhearn, Kevin) (Entered: 03/28/2014) |
| 04/30/2014 | | Minute Entry for proceedings held before Judge Sterling Johnson, Jr: Case called. Parties present. Status Conference held on 4/30/2014. The Court DENIES 26 Defendant's Motion for leave to file a counter claim to bring a counter-claim. The Court reserves judgment on the fully briefed Motion to Dismiss. Status Conference set for 9/26/2014 09:30 AM in Courtroom 6B South before Judge Sterling Johnson Jr. (Court Reporter Sherry Bryant.) (Rodriguez, Ana) (Entered: 05/13/2014) |
| 07/28/2014 | | ORDER: On September 4, 2013, Magistrate Judge Go ordered expedited discovery on the applicability of Title IX and liability of the Franciscan Bros., with responses to be provided within three weeks of that date. Since that time, Defendants have filed a Motion to Dismiss. The Court requests certification from the Magistrate that expedited discovery with respect to these issues has been completed. So Ordered. Ordered by Judge Sterling Johnson, Jr on 7/28/2014. (Droubi, Luna) (Entered: 07/28/2014) |
| 07/28/2014 | | SCHEDULING ORDER: A conference is scheduled for 7/30/2014 at 1:00 p.m. The parties may appear by telephone, but must confer with each other to arrange the call and call into chambers together. Ordered by Magistrate Judge Marilyn D. Go on 7/28/2014. (Moo-Young, Jillian) (Entered: 07/28/2014) |
| 07/30/2014 | | Minute Entry for a status conference held on 7/30/2014 before Magistrate Judge Marilyn D. Go: Appearances by K. Mulhearn for plaintiffs; P. Semprevivo for |

| | | |
|---|---|---|
| | | defendants. Based on the statements of counsel, Magistrate Judge Go certified on the record that the limited expedited discovery previously ordered regarding the applicability of Title IX has been completed. After discussion regarding other discovery, the Court set a schedule for initial disclosures, with plaintiffs serving their disclosures by 8/29/2014 and defendants by 9/12/2014. FTR: 1:02-1:08 (Moo-Young, Jillian) (Entered: 07/30/2014) |
| 08/14/2014 | 28 | MEMORANDUM AND ORDER, Pltff's Sorvillo's Defamation claim is DISMISSED for the reasons stated herein. Pltff Mooradian and Pltff Evangelista's Title IX claims are DISMISSED for lack of subject matter jurisdiction. Pltffs 15 Cross Motion is DISMISSED as moot. The Clerk of the Court is directed to close the case. (Ordered by Judge Sterling Johnson, Jr on 8/12/2014) Fwd. for Judgment. (Galeano, Sonia) (Entered: 08/14/2014) |
| 08/15/2014 | 29 | JUDGMENT, that Elizabeth Cucinotta Sorvillo's defamation claim is dismissed for the reasons stated in the Court's Memorandum and Order; that Felicia Mooradian and Mark Evangelista's Title IX claims are dismissed for lack of subject matter jurisdiction; and that Pltffs' cross-motion is dismissed as moot. (Ordered by Janet Hamilton, Deputy Clerk on 8/15/2014) (Galeano, Sonia) (Entered: 08/15/2014) |
| 09/15/2014 | 30 | NOTICE OF APPEAL as to 29 Judgment, 28 Order on Motion for Partial Summary Judgment, by Elizabeth Cucinotta Sorvillo. Filing fee $ 505, receipt number 0207-7198472. (Mulhearn, Kevin) (Entered: 09/15/2014) |
| 09/16/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 30 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 09/16/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/30/2014 13:29:54 | | |
| **PACER Login:** | KevinMulhearn:2624998:0 | **Client Code:** KM ES |
| **Description:** | Docket Report | **Search Criteria:** 1:13-cv-03357-SJ-MDG |
| **Billable Pages:** | 6 | **Cost:** 0.60 |

A-8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ELIZABETH CUCINOTTA SORVILLO,
"JANE DOE," and MARK EVANGELISTA,

**COMPLAINT**

Plaintiffs,

- against -                                    **CV 13            3357**

ST. FRANCIS PREPARATORY SCHOOL,
FRANCISCAN BROTHERS OF BROOKLYN,
BROTHER LEONARD CONWAY, and                    **JOHNSON**
VARIOUS MEMBERS OF THE ST. FRANCIS
PREPARATORY SCHOOL BOARD OF TRUSTEES,
WHOSE NAMES ARE CURRENTLY UNKNOWN
AND THUS DESIGNATED AS "JAMES DOE I-XXX,"       **GO, M.J.**
-------------------------------------------------------------------x

Plaintiffs, by and through their attorneys, Kevin T. Mulhearn, P.C.,

complaining of the Defendants, hereby allege that:

### OVERVIEW

1.     This action is brought by two former students, and a former teacher, at

St. Francis Preparatory School ("St. Francis Prep").

2.     Title IX, 20 U.S.C. § 1681(a) (1972), provides that a person may not

be subjected to discrimination, including discrimination on the basis of gender

(which includes gender-targeted sexual harassment and/or physical assaults), under

any education program or activity receiving federal funds.

## JURISDICTION AND VENUE

3.      This Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C. § 1331 insofar as Counts III and V raise claims under Title IX, 20 U.S.C. § 1681(a) (1972).

4.      This Court has subject matter jurisdiction of this action over Plaintiff ELIZABETH CUCINOTTA SORVILLO'S claim, pursuant to 28 U.S.C. § 1332(a), as the amount in controversy in this action exceeds $75,000.00, and the n Plaintiff ELIZABETH CUCINOTTA SORVILLO and Defendants are citizens (or organizations) of different states.

5.      This Court has supplemental jurisdiction over Plaintiffs' claims under New York State law, pursuant to 28 U.S.C. § 1367, in that said state claims are inextricably intertwined with the federal claims in this action.  Indeed, the state law claims are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in the Eastern District of New York pursuant to 18 U.S.C. § 1965(c) and 28 U.S.C. § 1391(b), because the claims arose in this District and a number of the Defendants reside in, transact business in, or maintain a principal place of business in this District.

## PARTIES

7.      Plaintiff, ELIZABETH CUCINOTTA SORVILLO ("SORVILLO"),

is an adult individual residing in the State of California.  She was a teacher at ST.

FRANCIS PREP from 2007 through 2011.

8.      Plaintiff, "JANE DOE," who wishes to remain anonymous, is an adult

individual residing in the State of New York.  She attended ST. FRANCIS PREP

from 2005 through her graduation in 2009.

9.      Plaintiff, MARK EVANGELISTA ("EVANGELISTA"), is an adult

individual residing in the State of New York.  He attended ST. FRANCIS PREP

from 1982 through his graduation in 1986.

10.      Defendant, ST. FRANCIS PREPARATORY SCHOOL ("ST.

FRANCIS PREP"), is, and at all material times has been, a college preparatory

school located in Queens, New York.

11.      Defendant, FRANCISCAN BROTHERS OF BROOKLYN

("FRANCISCAN BROTHERS") is, and at all material times has been, a religious

order located in Brooklyn, New York, and organized in the State of New York.

12.      Upon information and belief, at all material times, Defendant

FRANCISCAN BROTHERS owned, operated, maintained oversight over and

controlled all educational, administrative, and financial components of Defendant,

ST. FRANCIS PREP.

3

13.   Upon information and belief, members of Defendant FRANCISCAN BROTHERS comprised a substantial part of Defendant ST. FRANCIS PREP'S faculty and administrative staff.

14.   Defendant, BROTHER LEONARD CONWAY ("BROTHER LEONARD"), is, upon information and belief, an adult individual residing in the County of Queens State of New York.

15.   At all material times, from 1985 to present, BROTHER LEONARD has been the Principal (and top administrator) of ST. FRANCIS PREP.

16.   At all material times, BROTHER LEONARD was a member of Defendant FRANCISCAN BROTHERS.

17.   At all material times, BROTHER LEONARD acted within the course of his employment as an agent, servant, and/or employee of Defendants ST. FRANCIS PREP and/or FRANCISCAN BROTHERS.

18.   Defendants, JAMES DOE I-XXX, various members of ST. FRANCIS PREPARATORY SCHOOL BOARD OF TRUSTEES, were from various times – from 1985 to present – members of the ST. FRANCIS PREPARATORY SCHOOL BOARD OF TRUSTEES, and, upon information and belief, acted in the course of their employment as agents, fiduciaries, servants, and/or employees of Defendant ST. FRANCIS PREP.

19.    At this time, Plaintiffs have not received discovery on the names and addresses of all living ST. FRANCIS PREP BOARD OF TRUSTEES members, from 1985 to present.  The specific culpability of various members of the Board of Trustees, from 1985 to present (i.e., the specific acts or omissions of various members of the Board of Trustees which may give rise to liability), if any, needs to be further ascertained through the discovery in this action.

20.    Plaintiff SORVILLO started teaching at ST. FRANCIS PREP in September, 2007.  She taught Business Courses for the Computer Science and Business Department.

21.    In May, 2010, her Accounting students won the NYC Stock Market Game sponsored by SIFMA.  They beat 1,446 teams to come in first place in this prestigious city-wide competition.

22.    A few months later, in the summer of 2010, Plaintiff SORVILLO had an idea for a website that would be a place where people could vent about anything that bothers them and get things off their chest.

23.    Her concept was to have several categories for venting, and that the end result would be a website that would borrow various elements used successfully in Fmylife, Wikileaks, RateMyTeachers and Facebook (none of which are affiliated in any way with Plainitff SORVILLO'S website).

24.    Plaintiff SORVILLO created the name "Burn and rot in hell!" for her website as a satirical and comical name because that's what her spouse used to say in jest when she was angry about something.

25.    In August, 2010, Plaintiff SORVILLO asked then Assistant Principal and Dean of Women, Carolyn Szostek ("Szostek"), who was a close, personal friend, and who also was Plaintiff SORVILLO'S Spanish teacher her sophomore year of high school at ST. FRANCIS PREP, if she could create and publish such a website. Szostek had no problem with the website concept and the name and in fact thought it was hilarious.

26.    Plaintiff SORVILLO told Szostek that she did not want to build this website if it meant her job would be jeopardized in any way, especially because of the name. Szostek told Plaintiff SORVILLO not to worry and that she would handle it for her.

27.    Plaintiff SORVILLO started consulting with web designers and social media consultants and began to build the website. In the fall of 2010 Plaintiff Sorvillo launched the Facebook fan page for the site.

28.    Szostek asked Plaintiff SORVILLO to have the capability to oversee the posts, etc., so Plaintiff Sorvillo made Szostek an administrator on her Facebook fan page.

29.    Szostek also reviewed and revised and approved the Terms of Use Plaintiff SORVILLO wrote for the site.

30.    Szostek suggested categories for the site and consulted on various management decisions with Plaintiff SORVILLO.  For example, the post "rate up" is called "Burn, baby Burn" because Szostek liked that one best out of the choices given to her.  Szostek's daughter also worked on trademark and copyright issues for the website.

31.    On or about January 15, 2011, Plaintiff SORVILLO was scheduled to be on Sirius XM radio to talk about the website, and she asked Szostek if she should speak with BROTHER LEONARD CONWAY (the Principal of ST. FRANCIS PREP) personally about it.  Szostek told Plaintiff SORVILLO that she would handle it, that it would not be a problem, and she wished Plaintiff SORVILLO luck.

32.    Szostek spoke openly with other teachers about the website.

33.    Szostek told Plaintiff SORVILLO that she told Father Bill Sweeney, the school Chaplain, about the website and he said he was fine with it.

34.    As a courtesy, and out of respect, Plaintiff SORVILLO messaged Father Bill on Facebook anyway.  She told him the name of the website, Burnandrotinhell.com and that it would be a venting site.  He replied, on January 27, 2011, "Sounds great!!  Can't wait to see it!"

7

35.     Plaintiff SORVILLO told her Department Chair, Joseph Sciame ("Sciame"), about the website and filled him in on all the details, including that Szostek was working with her on it.  Sciame asked if Plaintiff SORVILLO could give him an internship for him to put on his resume because he was working toward another professional degree in Computer Science.  Plaintiff SORVILLO readily agreed and notified Szostek by text that she had given him an intern position.

36.     Plaintiff SORVILLO wanted a final blessing on the website so she went to see Father Bill in his office in the school a few days before she was launching the site.  This was in mid-March, 2011.  Father Bill wished Plaintiff SORVILLO luck and told her he hoped it would be a huge success.

37.     The "Burn and rot in Hell!" website launched on March 20, 2011.

38.     On March 24, 2011, Szostek deleted herself as an administrator on the website fan page, literally minutes after Plaintiff SORVILLO had taken a picture of it.

39.     ST. FRANCIS PREP suspended Plaintiff SORVILLO'S employment on March 24, 2011.

40.     ST. FRANCIS PREP terminated Plaintiff SORVILLO'S employment on March 25, 2011.

8

41.     On March 29, 2011, BROTHER LEONARD sent a letter to all

parents of ST. FRANCIS PREP students about the termination of Plaintiff

SORVILLO'S employment.  Said letter (a copy of which is annexed hereto as

Exhibit A and made a part hereof) provided in pertinent part that:

> About a week ago, [a] teacher launched a website designed to allow
> users to complain about various people and situations in their lives.
> Two of the categories people could comment on were teachers and
> students.  This teacher mentioned the website in her classes and
> encouraged students to use it.  Once we became aware of the website
> . . . , I met with the teacher and discussed with her that we found the
> site to be contrary to our mission and philosophy.  She saw no
> problem with the site, chose not to take it down, and declined an
> opportunity to discuss the matter further.  Because of her actions, she
> left me with no choice but to terminate her employment.

42.     This letter clearly referenced Plaintiff SORVILLO.

43.     Thereafter, in or about January, 2013, Defendant BROTHER

LEONARD, on behalf of Defendant ST. FRANCIS PREP, sent a letter (a copy of

which is annexed hereto as Exhibit B and made a part hereof) to alumni, parents,

faculty members, administrators, trustees, and others in the ST. FRANCIS PREP

school community, which provided in pertinent part that:

> Over the Christmas vacation, I received several disturbing emails
> from members of our community stating that the content of numerous
> recent "blog" postings on [an] internet site [that was created by the
> teacher St. Francis Prep dismissed two years earlier] are defamatory
> and have crossed over the line of free speech.

> Speech is not "free" when its purpose is to bully, to convey hatred, or
> to spread malicious lies and unsubstantiated rumors.

9

A-17

Case 1:13-cv-03357-SJ-MDG   Document 1   Filed 06/12/13   Page 10 of 50 PageID #: 10

44.   This January, 2013 letter, upon information and belief, was vetted and pre-approved by the ST. FRANCIS PREP BOARD OF TRUSTEES, and then sent by BROTHER LEONARD and ST. FRANCIS PREP to all members of the school community (students, parents, alumni, trustees, faculty), and was also posted electronically on both the school's official alumni website and the school's Facebook fan page. (ST. FRANCIS PREP'S Facebook fan page, upon information and belief, to date has almost 5,000 fans).

45.   This January, 2013 letter obviously referenced Plaintiff SORVILLO, as she was the only person in the universe who fit the description of a teacher fired two years earlier because of her involvement with a controversial website.


**AS TO PLAINTIFF JANE DOE:**

46.   Plaintiff JANE DOE began attending ST. FRANCIS PREP in the Fall of 2005.  She graduated in 2009.

47.   When JANE DOE first met her Spanish teacher, Brother Ben O'Reilly ("Brother Ben"), she thought he was funny.

48.   As the semester continued, though, she began to feel very uncomfortable around him. It was clear to her that he was using humor to gain the trust of the students and he was getting too close to the girls, especially JANE DOE.

10

49.    One day, Brother Ben said something so close to JANE DOE'S face that their noses touched.

50.    A few seniors at the school started to warn JANE DOE about Brother Ben. They told her he was known to be sexually inappropriate with girls.

51.    Brother Ben's behavior then got worse.  He asked Plaintiff JANE DOE to stay behind during the hour period -- the period all the students go to lunch.

52.    He told JANE DOE that he wanted to play a CD for her so that she could pick out a few songs for class (She is a native Spanish speaker.)

53.    He then said to JANE DOE, out of the blue, "My goal in life is to give you pleasure."

54.    Plaintiff JANE DOE thought that comment was weird, but she let it go. A few days later, Brother Ben played a video in class. He made a comment about the attractiveness of the woman in the video. When the boys in the class started laughing, Brother Ben came by Plaintiff JANE DOE'S desk, leered at her, and said, "You can be on a diet, but you can still look at the menu."

55.    After that incident, the students started calling Plaintiff JANE DOE "Brother Ben's girlfriend."

56.    Plaintiff JANE DOE asked a few of her classmates what they thought of Brother Ben's behavior.  Stories started springing up.  Plaintiff JANE DOE was

11

not the only girl who thought Brother Ben behaved inappropriately and was potentially dangerous.

57.     Coincidentally, another girl in the class had started confiding in Plaintiff JANE DOE that another teacher in the school was spending time with her alone and was sending her sexual messages online.

58.     When Plaintiff JANE DOE told this girl that she had decided to report Brother Ben, she blurted out that the other teacher had engaged in grossly inappropriate sexual banter.  The other girl asked Plaintiff JANE DOE not to say anything, but JANE DOE knew that this girl was in trouble. They were both 14 years old at the time.

59.     JANE DOE was close to her religion teacher. She spoke to her after class and told her what was going on. This teacher was alarmed by what JANE DOE told her about the teacher with the other girl and assured her that she would report that issue to Pat McLaughlin, ST. FRANCIS PREP'S assistant principal.

60.     This teacher also said she would report Brother Ben, but minimized the seriousness of Plaintiff JANE DOE'S complaints.  She said something, in words or substance, that "Brother Ben is just silly. He wouldn't do any harm. He's a Brother."

61.   Plaintiff, JANE DOE, was sensitive to the issue of sexual abuse as she had been sexually abused by a family friend (entirely unrelated to ST. FRANCIS PREP) for several years prior to her starting high school.

62.   Plaintiff JANE DOE was soon thereafter called into Pat McLaughlin's office.  She provided the details regarding the other girl and the other teacher on the specific condition that her identity, as well as the other girl's, would be protected.

63.   JANE DOE then told Pat McLaughlin about Brother Ben.

64.   Pat McLaughlin's response was that he couldn't really do anything about Brother Ben, because it was his word against JANE DOE'S.

65.   Pat McLaughlin told JANE DOE, in words or substance, "I have to protect my employees, too."

66.   His attitude about Brother Ben was entirely protective – as he indicated that he did not believe that a Franciscan Brother would be lecherous with a student.

67.   Plaintiff JANE DOE then persuaded every girl who ever experienced anything inappropriate with Brother Ben to come with her to Pat McLaughlin's office.  A number of girls crowded the small space and began spilling details as to Brother Ben's inappropriate behavior.

68.   Pat McLaughlin started writing down statements from each of the girls. He assured Plaintiff JANE DOE that appropriate action would be taken.

69.   A few days later, the other girl confronted JANE DOE. Without consulting the other girl, the school had called her parents. The other girl, upon information and belief, came from an abusive family, and they blamed her for what was going on.

70.   The other girl was also told that JANE DOE had reported the abuse.

71.   The other teacher was eventually fired.

72.   At first, ST FRANCIS PREP took no disciplinary action against Brother Ben.

73.   JANE DOE was forced, however, to return to his class and face BROTHER BEN, even after the administration spoke to him about JANE DOE'S complaints. It was obvious that Brother Ben knew that JANE DOE was the student who had come forward and complained about him.

74.   JANE DOE would walk into class shaking, and then have to deal with Brother Ben being intentionally nasty to her.

75.   Plaintiff JANE DOE then told her parents the whole story about Brother Ben.

76.   Her parents were livid. They came to the school and had a meeting with Pat McLaughlin and BROTHER LEONARD (the Principal).

14

77.     During the meeting, BROTHER LEONARD revealed to JANE

DOE'S parents that Brother Ben had a long, reported history of inappropriate

behavior with female students.  He was, for instance, notorious for asking girls to

do splits in their skirts for extra credit.

78.     BROTHER LEONARD was unable to tell JANE DOE'S parents why

they exposed children, including their daughter, to Brother Ben, when they knew

that he had a propensity to sexually harass girls.

79.     JANE DOE'S father lost his temper and demanded immediate

remedial action.  Pat McLaughlin agreed to take action after JANE DOE'S father

said, in words or substance, "What if this was your daughter? You are a Catholic

institution; you have an obligation, more than anyone, to do the right thing."

80.     The administration then decided to have Brother Ben evaluated by a

psychologist in Boston.  This psychologist who interviewed Brother Ben, upon

information and belief, issued a report which found him "unfit to work with

children."

81.     Brother Ben was then finally removed from the classroom.

82.     The ST. FRANCIS PREP administration, upon information and belief,

had told Brother Ben that JANE DOE was the student who had reported

him.

83.   The entire school found out that JANE DOE had reported BROTHER BEN, and as he was a popular teacher for many students, JANE DOE was then incessantly bullied by students who didn't know any better.

84.   Numerous students began to threaten to physically attack JANE DOE.

85.   Plaintiff JANE DOE thus had a miserable existence as a high school student at ST. FRANCIS PREP.  She was reviled, constantly threatened, and frequently harassed, all for the crime of being brave enough to confront inappropriate behavior when it was directed at her.

86.   In or about May, 2006, Plaintiff JANE DOE confided to Robyn Armon ("Armon"), ST. FRANCIS PREP'S Director of Guidance, that for years she had been sexually abused by a family friend in Florida.  Armon was the first person in the universe that JANE DOE told about this sexual abuse.  Armon, upon information and belief, at all material times was a New York State licensed guidance counselor and, upon information and belief, was required by state law to report any suspected or known child abuse of any students at ST. FRANCIS PREP.

87.   Armon did not report JANE DOE'S sexual abuse to any state agencies or officials and, in fact, advised JANE DOE (and her mother) to not press criminal charges against the man who was sexually abusing her. She did, however, telephone JANE DOE's parents and state, in words or substance, that "[JANE DOE"] has something important to tell you."  Thus faced with inquisitive parents,

16

JANE DOE was compelled to reveal the details of her sexual abuse to her parents without any support from Armon and before she was emotionally prepared to do so. The abrupt nature of this forced revelation caused JANE DOE to suffer much mental anguish and emotional pain and suffering.

88.   Although removed from the classroom, Brother Ben was still allowed to live in the school.

89.   One day, he returned to visit his former classroom. JANE DOE received a few texts from her friends telling her not to go to Spanish class because Brother Ben was standing outside the room, telling people that JANE DOE was a lunatic with a vendetta against men.

90.   Again, this incident caused Plaintiff JANE DOE to suffer much emotional distress and mental pain and suffering.

91.   A few weeks before she graduated, Plaintiff JANE DOE bumped into Brother Ben in the school library. She got sick to her stomach and ran away.

92.   Plaintiff JANE DOE suffered, and continues to suffer, from severe emotional distress and mental pain and suffering as a result of the aforesaid incidents and ST. FRANCIS PREP'S woefully inadequate response to her serious and legitimate (indeed, legitimized) complaints about Brother Ben.

## AS TO PLAINTIFF EVANGELISTA:

93.   Plaintiff EVANGELISTA graduated ST. FRANCIS PREP in 1986.

94.   He was a typical High School student, neither with the in crowd or the outsiders, just an average kid who got along with most of his classmates.

95.   During Plaintiff EVANGELISTA'S Junior year, in 1985, he was assigned to Robert Stenger's ("Stenger") History class.

96.   This History class was his first contact with Stenger.

97.   Plaintiff EVANGELISTA never had any serious run-ins with any teachers and was interested in History.  He was not a major trouble-maker.

98.   Plaintiff EVANGELISTA became a Dean's aide due to a close (and entirely positive) mentoring relationship with the men's dean, Mr. Gaspar Abruzzo ("Dean Abruzzo").  As a Dean's aide he was responsible for working with the Dean during his free periods.  Among other tasks Plaintiff EVANGELISTA was responsible for bringing students out of class to see the Dean.

99.   Plaintiff EVANGELISTA was thus in good standing with the administration and most ST. FRANCIS PREP teachers knew and liked him.

100.  One day in 1985, Plaintiff EVANGELISTA was headed to History class with Stenger.

101.  As he sat in class waiting for it to start, he was chatting and joking with one of the kids in front of him.

102.  Stenger, without words, came up to Plaintiff EVANGELISTA'S seat and hit him in the face with great force.  After striking Plaintiff EVANGELISTA, Stenger then said to him, "how about some reverse psychology?"

103.  Plaintiff EVANGELISTA then got up, still in shock, with a burning pain in his face and headed directly to The Dean of Men's office.

104.  Dean Abruzzo asked Plaintiff EVANGELISTA what happened and he informed him of the unprovoked physical assault perpetrated by Stenger.

105.  Dean Abruzzo was extremely upset by this report and became outraged that Stenger would engage in such conduct.

106.  With the large, red hand print still emblazoned on Plaintiff EVANGELISTA'S face, Dean Abruzzo rushed him into BROTHER LEONARD CONWAY'S office.

107.  Dean Abruzzo, visually upset, raised his voice at BROTHER LEONARD and said, in words or substance, "Stenger has gone too far," and "this has got to stop."

108.  Plaintiff EVANGELISTA was then asked to go into waiting area of BROTHER LEONARD'S office while a heated discussion continued between the two men.

109.  At the end of the day when Plaintiff EVANGELISTA went home and told his parents what happened, they were extremely upset.

110.   Plaintiff EVANGELISTA still carried the mark of Stenger's hand on his face the day after the assault.

111.   Plaintiff EVANTELISTA'S parents soon thereafter met with the principal, BROTHER LEONARD and Stenger.  Plaintiff EVANGELISTA'S parents demanded appropriate punishment and asked BROTHER LEONARD whether Stenger had assaulted any other students.  BROTHER LEONARD told them that Stenger was a well-regarded teacher and denied knowing that Stenger had ever previously assaulted any other children.

112.   The only tangible result of that conference was that ST. FRANCIS PREP moved Plaintiff EVANGELISTA into another History class and Stenger was forced to send him a form letter in which he apologized for his actions.

113.   Plaintiff EVANGELISTA was left to suffer the shame and daily sightings of Stenger and the whispers and snickering of his fellow classmates for the rest of his time at ST. FRANICS PREP.

## COUNT I

## (ON BEHALF OF PLAINTIFF ELIZABETH CUCINOTTA SORVILLO) DEFAMATION (AGAINST DEFENDANTS ST. FRANCIS PREPARATORY SCHOOL, FRANCISCAN BROTHERS OF BROOKLYN, BROTHER LEONARD CONWAY, AND VARIOUS OTHER MEMBERS OF THE ST. FRANCIS PREPARATORY <u>SCHOOL BOARD OF TRUSTEES)</u>

114.   Plaintiffs repeat and reallege each of the allegations contained in paragraphs "1" through "113" herein, as if each said allegation has been set forth at length.

115.   The January, 2013 letter of Defendants, BROTHER LEONARD and ST. FRANCIS PREP, contained false statements concerning Plaintiff, SORVILLO.

116.   Said letter clearly referenced SORVILLO.

117.   Said letter was published without privilege or authorization to numerous third parties (various members of the ST. FRANCIS PREP school community).

118.   Defendants published said letter with malice and/or reckless disregard for the truth or falsity of the allegations about Plaintiff SORVILLO contained therein.

119.   Said letter constitutes a mixed opinion which implies that it is based on facts which justify the opinion but which are unknown to those reading or hearing it.

120. The actionable element of the letter, therefore, is not the false opinion (i.e., that Plaintiff SORVILLO posted blog entries which were defamatory, with a purpose to bully, and/or convey hatred, and/or to spread malicious lies and unsubstantiated rumors) itself, but the implication that the writer (Defendant BROTHER LEONARD) knew certain facts, unknown to his audience, which supported the aforesaid opinion and were detrimental to the person about whom he was writing (SORVILLO).

121. Indeed, the average person reading the subject letter would take it to mean that BROTHER LEONARD and ST. FRANCIS PREP were in possession of undisclosed facts which justified the opinion that Plaintiff SORVILLO'S blog contained defamatory postings, and contained speech with a purpose to bully, to convey hatred, or to spread malicious lies and unsubstantiated rumors.

122. The letter contained additional information and statements which indicated that ST. FRANCIS PREP was about to take legal action against Plaintiff SORVILLO'S so-called "defamatory" postings:

> We are investigating those postings and evaluating all appropriate remedial action with the assistance of legal counsel. Please know that SFP will pursue all appropriate remedial action in order to protect our mission and the members of our SFP community.

123. This statement indicates that the over-all context in which the aforesaid statements were made suggested that, taking into consideration the communication as a whole, as well as its tone and purpose, Defendants were

implying that their statements were based on facts unknown to those reading the letter that Plaintiff SORVILLO had "crossed the line" into defamatory blog postings which were built upon, i.e., "malicious lies".

124.   Defendants' false statements about Plaintiff SORVILLO thus exposed her to public contempt, ridicule, aversion, or disgrace, and induced an evil opinion of her in the minds of right-thinking persons, and deprived her of their friendly intercourse in society.

125.   The aforesaid statements of Defendants disparaged and injured Plaintiff SORVILLO in her trade, business and profession (in connection with both the operation and success of her commercial website and in the teaching profession), and, as such constitutes defamation *per se*.

126.   In addition, as a direct and proximate result of Defendants' defamatory statements about Plaintiff SORVILLO, Plaintiff SORVILLO suffered severe pecuniary losses, such as lost income, fees for psychological counseling, and severe emotional distress and pain and suffering.

127.   The acts and omissions of Defendants demonstrated a reckless and conscious disregard of the rights, health, and safety of the rights of Plaintiff SORVILLO and were so malicious, willful, and wanton, as to constitute a grievous injury to the public-at-large, as well as to Plaintiff SORVILLO, and give rise to punitive damages.

128.  Plaintiff SORVILLO thus claims compensatory damages against the

Defendants in a sum not less than $5 million, and punitive damages in a sum not

less than $5 million.

## COUNT II

### (ON BEHALF OF PLAINTIFF JANE DOE)
### NEGLIGENT SUPERVISION & RETENTION (AGAINST DEFENDANTS ST. FRANCIS PREPARATORY SCHOOL, FRANCISCAN BROTHERS OF BROOKLYN, BROTHER LEONARD CONWAY, AND VARIOUS OTHER MEMBERS OF THE ST. FRANCIS PREPARATORY SCHOOL BOARD OF TRUSTEES)

129.  Plaintiffs hereby repeat and reallege each of the allegations contained

in paragraphs "1" through "128" hereinabove, as if each has been fully set forth at

length.

130.  At all material times, from 2006 to 2009, the ST. FRANCIS PREP

Defendants knew of, or should have known of, its employee, Brother Ben

O'Reilly's, propensity for engaging in the illegal and patently offensive sexual

harassment of children.

131.  Nevertheless, the ST. FRANCIS PREP Defendants carelessly and

recklessly failed to adequately supervise Brother Ben, even after specific

complaints of sexual harassment had been lodged against Brother Ben by various

students.

132.   Indeed, in 2006, after receiving numerous complaints of sexual harassment against Brother Ben, the ST. FRANCIS PREP Defendants permitted Brother Ben to remain in the position of teacher, which kept Brother Ben away from the supervision of any administrators, but in close proximity to many unsuspecting and innocent girls who were then harassed by Brother Ben.

133.   As a direct and proximate result of Defendants' aforesaid acts and omissions, and negligent retention and supervision of Brother Ben, Plaintiff JANE DOE suffered severe and prolonged emotional distress and mental pain and suffering. All of this harm – to Plaintiff JANE DOE and other victims of Brother Ben – was reasonably foreseeable to the Defendants at the time of their misrepresentations, affirmative misconduct, silence, inaction and conspiracy in the face of Brother Ben's damaging misconduct.

134.   The acts and omissions of Defendants demonstrated a reckless and conscious disregard of the rights, health, and safety of the rights of Plaintiff JANE DOE and other victims and potential victims of Brother Ben, and were so malicious, willful, and wanton, moreover, as to constitute a grievous injury to the public-at-large, as well as to the Plaintiff JANE DOE, and give rise to punitive damages.

135.   Plaintiff JANE DOE thus claims compensatory damages against the

Defendants in a sum not less than $3 million, and punitive damages in a sum not

less than $3 million.


# COUNT III
## (ON BEHALF OF PLAINTIFF JANE DOE)
## VIOLATION OF TITLE IX
## (AGAINST DEFENDANT ST. FRANCIS PREPARATORY SCHOOL)

136.   Plaintiffs hereby repeat and reallege each of the allegations contained

in paragraphs "1" through "135" hereinabove, as if each has been fully set forth at

length.

137.   Title IX, 20 U.S.C. § 1681 (a) (1972), provides in pertinent part that:

> No person in the United States shall, on the basis of sex, be excluded
> from participation in, be denied the benefits of, or be subjected to
> discrimination under any education program or activity receiving
> Federal financial assistance.

138.   Title IX regulates private schools which choose to receive federal

funding.

139.   Title IX provides a private cause of action against a recipient of

federal funds for discrimination based on sex, sexual harassment and sexual abuse.

140.   ST. FRANCIS PREP, upon information and belief, was at all material

times a recipient of Federal financial assistance, and thus subject to Title IX, for

four distinct reasons: (1) at all material times,  the school's students received

federal financial aid; (2) at all material times, the school has been exempt from paying federal taxes (i.e., was a tax exempt entity), and an exemption from federal taxes produced the same result as a direct federal grant (the school possessed funds that otherwise would have belonged to the Government); (3) the school, at various times, from 1985 to present, upon information and belief, received federal loans and other federal financial assistance for various construction and/or rehabilitation projects; and (4) upon information and belief, at various times from 1985 to present, the school received substantial Elementary and Secondary Education Act ("ESEA") grants for, *inter alia*, funds for educationally deprived children, funds for library inventories, and funds for A-V equipment.

141.   Defendant ST. FRANCIS PREP is liable to Plaintiff JANE DOE under Title IX because, at all material times, it was deliberately indifferent to multiple known acts of discrimination (i.e., Brother Ben's sexual harassment of girls), which occurred under its control (including on its premises and in its facilities, during school hours, and during its normal hours of operation of its academic programs and activities).

142.   Indeed, ST. FRANCIS PREP'S deliberate indifference both directly caused the sexual harassment to occur and made female students, including Plaintiff JANE DOE, vulnerable to such sexual harassment, and that sexual harassment did occur and took place in a context subject to the school's control.

27

143. At all material times, for the reasons set forth herein, officials of ST. FRANCIS PREP who had authority to institute corrective measures on the school's behalf (such as the Principal, BROTHER LEONARD CONWAY and various other administrators and/or trustees) had actual notice of, and were deliberately indifferent to, Brother Ben's sexual harassment of girls.

144. ST. FRANCIS PREP and its administrators, as stated above, had knowledge of a substantial risk of serious harm to students, such as Plaintiff JANE DOE, in a context where multiple prior allegations of sexual harassment were lodged against Brother Ben, and Brother Ben's proclivities for the sexual harassment of girls, and his sexual harassment of girls, were well known to various ST. FRANCIS PREP administrators and trustees.

145. Upon information and belief, at all material times, Brother Ben targeted, discriminated against, and sexually harassed Plaintiff JANE DOE because she was a girl, and ST. FRANCIS PREP'S administrators and trustees had actual knowledge that Brother Ben was discriminating against, and sexually harassing children because they were girls.

146. ST. FRANCIS PREP'S response to Brother Ben's known discrimination constitutes deliberate indifference and was clearly unreasonable in light of all of the known circumstances.

147.   As a direct and proximate result of ST. FRANCIS PREP'S violation of Title IX, Plaintiff JANE DOE suffered severe emotional distress and mental pain and suffering, as described at length herein.

148.   All of this harm -- to Plaintiff JANE DOE and other victims of Brother Ben -- was reasonably foreseeable to the ST. FRANCIS PREP Defendants at the time of its violations of Title IX.

149.   The acts and omissions of ST. FRANCIS PREP, particularly its violations of Title IX, demonstrated a reckless and conscious disregard of the rights, health, and safety of the rights of Plaintiff JANE DOE and other victims and potential victims of Brother Ben, and were so malicious, willful, and wanton, moreover, as to constitute a grievous injury to the public-at-large, as well as to the Plaintiff JANE DOE, and give rise to punitive damages.

150.   Plaintiff JANE DOE, pursuant to 42 U.S.C. § 1988, and related authority, also seek all reasonable legal fees, costs, and expenses, to be incurred in connection with his Title IX claim.

151.   Plaintiff JANE DOE herein thus claims compensatory damages against the Defendant ST. FRANCIS PREP in a sum not less than $3 million, punitive damages in a sum not less than $3 million, and reasonable attorneys' fees, costs, and expenses incurred in the prosecution of this claim.

## TOLLING OF PLAINTIFF JANE DOE'S CLAIMS
## BASED ON TEMPORARY INSANITY:

152.  Plaintiff JANE DOE'S date of birth is November 2, 1991.

153.  From July, 2011 through December, 2012, Plaintiff JANE DOE suffered from severe and debilitating mental illnesses and neuroses which stemmed, in part, from her sexual harassment at ST. FRANCIS PREP.

154.  From July, 2011, Plaintiff JANE DOE was mentally and emotionally unstable.

155.  She was unable to refrain from sexually promiscuous behavior; she was unable to maintain concentration in school (she had been attending F.I.T.) and thus had to drop out of college; she was unable to obtain any gainful employment for any significant duration; she had been prescribed Depakote and Zoloft by her treating psychiatrist; she described a feeling of disassociation when engaging in sexual behaviors; she became severely depressed (often unable to get out of bed); she had an eating disorder which made her stop eating and caused her to lose 20 pounds; she was prescribed Lamictal and Pristig and Valium by her new treating psychiatrist; she became completely and utterly dysfunctional, hopeless, distraught, and suicidal.

156.  In late December, 2011, Plaintiff JANE DOE swallowed half a bottle of Valium and was taken to NYU Medical Center where she was able to talk her way out of psychiatric admission (Her Valium was also returned to her).

157.  On December 31, 2011, Plaintiff JANE DOE swallowed the other half

of her Valium pills and – in a suicide attempt – and was hospitalized at Holliswood

Hospital.

158.  After Plaintiff JANE DOE was discharged from Holliswood Hospital,

she voluntarily checked into Silver Hill Hospital outpatient for about one month.

159.  From January 2012, through December 2012, Plaintiff JANE DOE

continued to suffer from severe depression, eating disorders, and – as she was

placed on a heavy pharmacological regiment (with frequent psychiatric and

psychological treatment and counseling) – she remained incapable of protecting

her legal rights because of her overall inability to function in society.

160.  From July 2011 through December 2012, Plaintiff JANE DOE

suffered from a major depressive disorder which severely impaired her ability to

protect her legal rights or interests, or otherwise function in society.

161.  She was, during this period, diagnosed with Bipolar II Disorder, Panic

Disorder without agoraphobia, and Post-Traumatic Stress Disorder.

162.  CPLR § 208 provides that the statute of limitations period is extended

if "a person entitled to commence an action is under a disability because of …

insanity at the time the cause of action accrues."

163.  Plaintiff JANE DOE had three years from her 18th birthday, or until

November 2, 2012, to bring her negligent supervision and retention and Title IX

claims against Defendant within the standard three years statute of limitation

(CPLR § 214(5)) for both of those actions.

164.   Plaintiff JANE DOE, however, should get that statute of limitations

extended (or tolled), pursuant to CPLR § 208, based on temporary mental insanity

(from July 2011 through December 2012) which prevented her from being able to

protect her legal rights or otherwise function in society.

165.   With this extension for temporary "insanity" Plaintiff JANE DOE's

claims for negligent retention and supervision and Title IX are both timely.

### COUNT IV
### (ON BEHALF OF PLAINTIFF EVANGELISTA)
### NEGLIGENT SUPERVISION & RETENTION (AGAINST DEFENDANTS
### ST. FRANCIS PREPARATORY SCHOOL, FRANCISCAN BROTHERS OF
### BROOKLYN, BROTHER LEONARD CONWAY, AND VARIOUS OTHER
### MEMBERS OF THE ST. FRANCIS PREPARATORY SCHOOL BOARD
### OF TRUSTEES)

166.   Plaintiffs hereby repeat and reallege each of the allegations contained

in paragraphs "1" through "165" hereinabove, as if each has been fully set forth at

length.

167.   At all material times, from 1985 to 1988, the ST. FRANCIS PREP

Defendants knew of, or should have known of, its employee, Robert Stenger's,

propensity for engaging in illegal, immoral, and patently offensive, physical abuse

of children.

32

168. Nevertheless, the ST. FRANCIS PREP Defendants carelessly and recklessly failed to adequately supervise Stenger, even after specific complaints of physical abuse had been lodged against Stenger by various students.

169. In 1985, after receiving numerous complaints of physical and/or sexual abuse against Stenger, the ST. FRANCIS PREP Defendants permitted Stenger to remain in the position of teacher and assistant football coach, which kept Stenger away from the supervision of any administrators, but in close proximity to many unsuspecting and innocent boys who were then physically and/or sexually abused by Stenger.

170. As a direct and proximate result of Defendants' aforesaid acts and omissions, and negligent retention and supervision of Stenger,  Plaintiff EVANGELISTA suffered physical abuse, and severe and prolonged emotional distress and mental pain and suffering.  All of this harm -- to Plaintiff EVANGELISTA and other victims of Stenger -- was reasonably foreseeable to the Defendants at the time of their misrepresentations, affirmative misconduct, silence, inaction and conspiracy in the face of Stenger's damaging misconduct.

171. School records related to retention, supervision, discipline, termination, and complaints about, claims against, or investigations into a teacher accused of sexually harassing and/or physically abusing a student are "material and

necessary to a fair resolution" of a student's action against the school for negligent supervision and retention.

172.  Upon information and belief, the ST. FRANCIS PREP Defendants deliberately lost and/or destroyed, or failed to produce or create, various documents which were created, or should have been created, and pertained to Stenger's physical and/or sexual abuse of children, and/or ST. FRANCIS PREP'S various investigations of sexual harassment claims against Stenger.

173.  Upon information and belief, the ST. FRANCIS PREP Defendants engaged in the active destruction and spoliation of documents and evidence critical to Plaintiff EVANGELISTA'S claims at various times, including within the statutory limitations period for that Plaintiff.

174.  Upon information and belief, said destruction and/or spoliation of documents and evidence was intended by the ST. FRANCIS PREP Defendants to conceal from Plaintiff EVANGELISTA, and others similarly situated, Defendants' knowledge that Stenger had a propensity to physically and/or sexually abuse boys at the school, and these deceptions, concealments, and affirmative misrepresentations were intended to, and in fact did, constrain Plaintiff EVANGELISTA (and others similarly situated), from commencing legal action against the Defendants.

175. The acts and omissions of Defendants demonstrated a reckless and conscious disregard of the rights, health, and safety of the rights of Plaintiff EVANGELISTA and other victims and potential victims of Stenger, and were so malicious, willful, and wanton, moreover, as to constitute a grievous injury to the public-at-large, as well as to the Plaintiffs, and give rise to punitive damages.

176. Plaintiff EVANGELISTA thus claims compensatory damages against the Defendants in a sum not less than $3 million, and punitive damages in a sum not less than $3 million.

**COUNT V**
**(ON BEHALF OF PLAINTIFF EVANGELISTA)**
**VIOLATION OF TITLE IX, AS CLARIFIED BY CIVIL RIGHTS**
**RESTORATION ACT OF 1987**
**(AGAINST DEFENDANT ST. FRANCIS PREPARATORY SCHOOL)**

177. Plaintiffs hereby repeat and reallege each of the allegations contained in paragraphs "1" through "176" hereinabove, as if each has been fully set forth at length.

178. Title IX, 20 U.S.C. § 1681 (a) (1972), provides in pertinent part that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

179.   Title IX regulates private schools which choose to receive federal funding.

180.   Title IX provides a private cause of action against a recipient of federal funds for discrimination based on sex, sexual harassment and sexual abuse.

181.   Indeed, a single physical assault (which Plaintiff EVANGELISTA suffered) constitutes severe and objectively offensive sexual harassment for Title IX purposes.

182.   ST. FRANCIS PREP, upon information and belief, was at all material times a recipient of Federal financial assistance, and thus subject to Title IX, for four distinct reasons: (1) at all material times,  the school's students received federal financial aid; (2) at all material times, the school has been exempt from paying federal taxes (i.e., was a tax exempt entity), and an exemption from federal taxes produced the same result as a direct federal grant (the school possessed funds that otherwise would have belonged to the Government); (3) the school, at various times, from 1985 to present, upon information and belief, received federal loans and other federal financial assistance for various construction and/or rehabilitation projects; and (4) upon information and belief, at various times from 1985 to present, the school received substantial Elementary and Secondary Education Act ("ESEA") grants for, *inter alia*, funds for educationally deprived children, funds for library inventories, and funds for A-V equipment.

183.   Defendant ST. FRANCIS PREP is liable to Plaintiff EVANGELISTA under Title IX because, at all material times, it was deliberately indifferent to multiple known acts of discrimination (i.e., Stenger's physical and sexual assaults of boys), which occurred under its control (including on its premises and in its facilities, during school hours, and during its normal hours of operation of its academic programs and activities).

184.   Indeed, ST. FRANCIS PREP'S deliberate indifference both directly caused the abuse to occur and made male students, including Plaintiff EVANGELISTA, vulnerable to such abuse, and that abuse did occur and took place in a context subject to the school's control.

185.   At all material times, for the reasons set forth herein, officials of ST. FRANCIS PREP who had authority to institute corrective measures on the school's behalf (such as the Principal, BROTHER LEONARD CONWAY and various other administrators and/or trustees) had actual notice of, and were deliberately indifferent to, Stenger's physical and sexual misconduct.

186.   ST. FRANCIS PREP and its administrators, as stated above, had knowledge of a substantial risk of serious harm to students, such as Plaintiff EVANGELISTA, in a context where multiple prior allegations of physical and sexual abuse were lodged against Stenger, and Stenger's proclivities for the physical and sexual abuse of children, and his actual physical and sexual abuse of

children, were well known to various ST. FRANCIS PREP administrators and trustees.

187.  Upon information and belief, at all material times, Stenger targeted, discriminated against, sexually harassed, and physically abused Plaintiff EVANGELISTA because he was a boy, and ST. FRANCIS PREP'S administrators and trustees had actual knowledge that Stenger was discriminating against, sexually harassing, and physically and sexually abusing children because they were boys.

188.  ST. FRANCIS PREP'S response to Stenger's known discrimination constitutes deliberate indifference and was clearly unreasonable in light of all of the known circumstances.

189.  On March 22, 1988, Congress enacted the Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28 (1988) (the "Restoration Act").

190.  The stated purpose of that statute was to "restore the broad scope of coverage and to clarify the application of [*inter alia*] Title IX of the Education Amendments of 1972."

191.  Congress found that the Supreme Court, in *Grove City College v. Bell*, 465 U.S. 555 (1984), had unduly narrowed the application of Title IX and that it was "necessary to restore the prior consistent and long-standing executive branch

interpretation and broad, institution-wide application of those laws as previously administered."

192.    The Restoration Act clarified Title IX in part by defining the term "program or activity" as "all the operations" of any school which is extended federal financial assistance.

193.    The Restoration Act overruled *Grove City* by prohibiting gender-based discrimination by any school which is a recipient of federal funding, on an institution-wide basis, instead of only in connection with the limited program or activity actually receiving federal funds.

194.    The use of the terms "restore" and "clarify" in the Restoration Act indicates that the purpose of the statute was not to amend or change Title IX, but rather to reject the Supreme Court's earlier interpretation as to the scope of Title IX applicability, and to codify Title IX's congressional purpose (which was long in place).

195.    The Restoration Act clarifies that Plaintiff EVANGELISTA has a viable remedy to address ST. FRANCIS PREP'S violation of his Title IX rights.

196.    The Restoration Act, therefore, should, if necessary, be applied retroactively to Plaintiff EVANGELISTA'S Title IX claim in this case.

197.   The Restoration Act, moreover, mandates that any program in an institution which receives federal financial aid, no matter how specific the purpose or program for which that aid is given, must follow the guidelines of Title IX.

198.   Upon information and belief, the legislative history of the Restoration Act indicates that Congress intended the Restoration Act to be applied retroactively.

199.   The Restoration Act involves a statutory clarification of Title IX which is merely "procedural or remedial in nature", and thus should, if necessary, be applied retroactively to Title IX.

200.   Because Congress did not provide a statute of limitations for Title IX, the most closely analogous statute of limitations under state law governs the federal cause of action. As a Title IX claim for damages is most closely analogous to a common law action for personal injury, in this case this Court should borrow New York CPLR § 214(5)'s three year statute of limitations for personal injuries.

201.   Federal law governs the determination of the point at which the limitations period begins to run on a Title IX suit.  When, as in this case, the defendant fraudulently conceals its own wrongdoing, the time does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action

202.   In the alternative, for the reasons set forth herein, Plaintiffs' Title IX claims should be equitably tolled from the date of the misrepresentations at issue until the date Plaintiff EVANGELISTA discovered said misrepresentations: in or about January 2013 (when Plaintiff EVANGELISTA viewed a website which contained allegations that ST. FRANCIS PREP had known of Stenger's propensity to physically and/or sexually assault boys).

203.   As this suit is being filed in June, 2013, long before the three year statute of limitations has run (as measured from the date Defendant's estoppel ceased to be operational (in other words, from the date of Plaintiff EVANGELISTA'S discovery of the misrepresentations), Plaintiff EVANGELISTA exercised the requisite due diligence with respect to his filing of his Title IX claim.

204.   Based on this framework, and for the reasons set forth hereinabove, Plaintiff EVANGELISTA'S Title IX claim is timely.

205.   As stated herein at length, ST. FRANCIS PREP'S prolonged self-concealing fraud, numerous material misrepresentations, and ongoing fraudulent concealment prevented Plaintiff EVANGELISTA from reasonably ascertaining that ST. FRANCIS PREP and its administrators and various trustees – not just Stenger – had engaged in wrongful conduct towards them.

206. As a direct and proximate result of ST. FRANCIS PREP'S violation of Title IX, Plaintiff EVANGELISTA suffered physical abuse and severe and prolonged emotional harm, as described at length herein.

207. All of this harm – to Plaintiff EVANGELISTA and other victims of Stenger – was reasonably foreseeable to the Defendant ST. FRANCIS PREP at the time of its violations of Title IX.

208. The acts and omissions of ST. FRANCIS PREP, particularly its violations of Title IX, demonstrated a reckless and conscious disregard of the rights, health, and safety of the rights of Plaintiff EVANGELISTA and other victims and potential victims of Stenger, and were so malicious, willful, and wanton, moreover, as to constitute a grievous injury to the public-at-large, as well as to the Plaintiff EVANGELISTA, and give rise to punitive damages.

209. Plaintiff EVANGELISTA, pursuant to 42 U.S.C. § 1988, and related authority, also seek all reasonable legal fees, costs, and expenses, to be incurred in connection with his Title IX claim.

210. Plaintiff EVANGELISTA herein thus claims compensatory damages against the Defendant ST. FRANCIS PREP in a sum not less than $3 million, punitive damages in a sum not less than $3 million, and reasonable attorneys' fees, costs, and expenses incurred in the prosecution of this claim.

## TOLLING OF PLAINTIFF EVANGELISTA'S CLAIMS
## BASED ON EQUITABLE ESTOPPEL:

211.   Prior to Stenger's assault of Plaintiff EVANGELISTA, ST. FRANCIS

PREP and various administrators, including BROTHER LEONARD CONWAY,

knew that other students had made complaints to the school that Stenger had

physically assaulted and/or sexually abused other boys at the school.

212.   The Defendants, however, failed to disclose to Plaintiff

EVANGELISTA and/or his parents, and/or other students, former students, or law

enforcement officials, that the school had received actual notice of Stenger's

propensity to physically assault and/or sexually abuse boys.

213.   Instead, at all material times, the ST. FRANCIS PREP Defendants

made false and fraudulent misrepresentations to students, including Plaintiff

EVANGELISTA, that Stenger was a trustworthy and highly regarded teacher and

coach who was held in good-standing at the school.

214.   These misrepresentations were made by Defendants at various school

events attended by Plaintiff EVANGELISTA, and in various publications

(yearbooks, school newspaper, school correspondence) delivered to Plaintiff

EVANGELISTA during his tenure at the school.

215.   The ST. FRANCIS PREP Defendants made the aforesaid

representations knowing that students, such as Plaintiff EVANGELISTA, would

rely upon them, and Plaintiff EVANGELISTA did in fact rely upon said

representations in enrolling at (and remaining in) ST. FRANCIS PREP, and in

willingly enrolling in a class taught by Stenger.

216.   Plaintiff EVANGELISTA did not learn of these misrepresentations

until he read about them on a website in or about January, 2013.

217.   Plaintiff EVANGELISTA refrained from filing a lawsuit against ST.

FRANCIS PREP and its culpable officials because, until January, 2013, he did not

know, nor could have known, that ST. FRANCIS PREP administrators had

received multiple complaints about Stenger physically assaulting and/or sexually

abusing boys prior to his own physical assault.

218.   Plaintiff EVANGELISTA, moreover, engaged in due diligence

immediately after his assault by bringing the assault to the immediate attention of

the school's administrators.

219.   As ST. FRANCIS PREP had committed to a course of concealing

from students (even those who had been assaulted) its knowledge of Stenger's

dangerous propensity to assault boys (and kept him as a teacher for many years

after Plaintiff EVANGELISTA reported his assault), there is nothing Plaintiff

EVANGELISTA could have done to have earlier learned of the ST. FRANCIS

PREP administrators' knowledge of Stenger's prior bad acts directed against boys.

220.   Pursuant to the doctrine of equitable estoppel (or equitable tolling),

Plaintiff EVANGELISTA'S claims against Defendants are thus not time-barred.

44

WHEREFORE, based on the aforesaid, Plaintiffs hereby demand judgment in their favor and against each of the Defendants, jointly and severally, against the appropriate Defendants, as follows:

1.      As and for Count I, Defamation (Against Defendants, ST. FRANCIS PREP, FRANCISCAN BROTHERS, BROTHER LEONARD CONWAY, and various members of the ST. FRANCIS PREP BOARD OF TRUSTEES), a sum not less than $5 million in compensatory damages, and a sum not less than $5 million in punitive damages (for Plaintiff SORVILLO);

2.      As and for Count II, Negligent Supervision and Retention (Against Defendants, ST. FRANCIS PREP, FRANCISCAN BROTHERS, BROTHER LEONARD CONWAY, and various members of the ST. FRANCIS PREP BOARD OF TRUSTEES), a sum not less than $3 million in compensatory damages, and a sum not less than $3 million in punitive damages (for Plaintiff "JANE DOE");

3.      As and for Count III, Violation of Title IX (against Defendant ST. FRANCIS PREP), a sum not less than $3 million in compensatory damages, and a sum not less than $3 million in punitive damages (for Plaintiff "JANE DOE");

4.      As and for Count IV, Negligent Supervision and Retention (Against Defendants, ST. FRANCIS PREP, FRANCISCAN BROTHERS, BROTHER LEONARD CONWAY, and various members of the ST. FRANCIS PREP

BOARD OF TRUSTEES), a sum not less than $3 million in compensatory

damages, and a sum not less than $3 million in punitive damages (for Plaintiff

EVANGELISTA);

     5.     As and for Count V, Violation of Title IX (against Defendant ST.

FRANCIS PREP), a sum not less than $3 million in compensatory damages, and a

sum not less than $3 million in punitive damages (for Plaintiff EVANGELISTA);

and

     6.     Any other, different or further relief as this Honorable Court may

deem just, proper or necessary.

## DEMAND FOR TRIAL BY JURY

     Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated:  June 12, 2013
        Orangeburg, New York     Respectfully submitted,

                              KEVIN T. MULHEARN, P.C.

                              KEVIN T. MULHEARN, ESQ. (KM 2301)
                              *Attorneys for Plaintiffs*
                              60 Dutch Hill Road, Suite 8
                              Orangeburg, New York 10962
                              Phone: (845) 398-0361
                              Fax:  (845) 398-3836
                              Email: kmulhearn@ktmlaw.net

# EXHIBIT A

*St. Francis*
*Preparatory*
*School*   6100 Francis Lewis Blvd., Fresh Meadows, NY 11365-2840 • (718) 423-8810 • www.sfponline.org

March 29, 2011

Dear Parents/Guardians,

As you probably know, last week we terminated the employment of one of our teachers. I write to inform you of the circumstances surrounding this termination and our reason for taking this action. While the events of the past week have been difficult at times, they have also provided important teachable moments and opportunities for us to re-affirm our values and mission with the entire school community.

About a week ago, this teacher launched a web site designed to allow users to complain about various people and situations in their lives. Two of the categories people could comment on were teachers and students. This teacher mentioned the web site in her classes and encouraged students to use it. Once we became aware of the web site (thanks to the comments of students and alumni who were troubled by its message and content), I met with the teacher and discussed with her that we found the site to be contrary to our mission and philosophy. She saw no problem with the site, chose not to take it down, and declined an opportunity to discuss the matter further. Because of her actions, she left me with no choice but to terminate her employment.

On last Friday, Mr. McLaughlin and I visited all of her classes to explain the reasons for our decision; we listened to the concerns of her students. Initially, the students expressed some disagreement and disappointment with my decision: they liked their teacher and were sorry to see her go. But as we discussed our reasoning and philosophy, I believe most of them understood why her actions conflicted with our mission and could not be supported. I also addressed the entire school community over the P.A. to explain the situation. At this point, I believe we are now moving forward in a positive way.

Respect is central to our school philosophy. As Franciscans, we pledge ourselves to respect for students and teachers, learning, and all of God's Creation. This web site urged students (and others) to disrespect others, often in the crassest ways. The web site was not a celebration of free speech but an encouragement of cyber-bullying. In our mission statement, we proclaim that "we value the unique contribution each person makes to the Prep community." This valuing cannot take place in an atmosphere of bullying, anonymous name-calling, and purposeless hurting. While too much of our culture applauds such actions, we know we are different. It is the task of the school to stand strongly for our values and to share them with our students.

While I may wish the events of the past week had never taken place, they have given us all the opportunity to re-visit and re-affirm what we do each and every day at St. Francis Prep. It is the reason you send your children to us, and it is what you expect us to uphold. We have gone through some difficult days, but I believe we have emerged stronger. In an age that too often demeans and belittles others, we continue to hold firm to our values and faith: faith in God who loves all of us and a commitment to sharing and demonstrating that love in all our encounters. I appreciate your support in this situation. Should you have any questions or concerns related to this matter, please feel free to contact me. May the blessings of St. Francis be with you and your family. Please accept my wishes for a peaceful and joyous Easter.

Sincerely,

Br. Leonard Conway, O.S.F.
Principal

# EXHIBIT B



**ST. FRANCIS PREPARATORY SCHOOL**
6100 Francis Lewis Blvd, Fresh Meadows, NY 11365
(718) 423-8810 · www.sfponline.org

Accredited by Middle States Association of Colleges
and Secondary Schools
Member of the Board of Regents of the State of New York
Member of New York State Association of Independent Schools
Recipient of the U.S. Education Department's "Excellence
in Private Education" Award
Recognized by U.S. NEWS AND WORLD REPORT
as an "Outstanding American High School"

As we begin 2013, we have much to be thankful for in our St. Francis Prep community. At the core of our community, we are blessed by a dedicated faculty and administration. Year-after-after, our teachers and administrators make it possible for SFP to maintain the highest standards of Franciscan Catholic secondary education. We are most grateful for our students, who work so hard to fulfill their personal potential, as well as our spiritual and academic mission. They do so with passion, regardless of whether they are in chapel, in the class room, in our surrounding community, or on the athletic field. We also remain indebted to and thankful for our supportive parents. Without their sacrifice and trust, we would not be able to succeed in spreading St. Francis' message of peace.

It is also important for us to remember that while we will always be accepting of those who respectfully choose not to support our mission, we will not stand still when someone or something seeks to unjustly harm our community. Nearly two years ago, SFP dismissed a teacher when she refused to discontinue her involvement in a public web site that encouraged bullying, and that contained content that is wholly contrary to and in conflict with the SFP mission. Over the Christmas vacation, I received several disturbing emails from members of our community stating that the content of numerous recent "blog" postings on that internet site are defamatory and have crossed over the line of free speech.

We are investigating those postings and evaluating all available responsive action with the assistance of legal counsel. Please know that SFP will pursue all appropriate remedial action in order to protect our mission and the members of our SFP community. I ask that you also remain mindful that, just as the First Amendment protects freedom of speech, it also ensures the free exercise of religion.

In the interim, I kindly request that anyone with further information about this matter to contact me or Pat McLaughlin without delay. We will investigate this matter fully, fairly and in conformity with our established policies and practices. As always, our policy and operational decisions will be made to ensure that SFP will remain a trusted institution for the education of the soul, as well as the mind and the body.

SFP's mission will always be rooted in the good news of the Gospels and St. Francis' message of love, dignity, respect and forgiveness. Speech is not "free" when its purpose is to bully, to convey hatred, or to spread malicious lies and unsubstantiated rumors. Please remember that, as a member or our community, you must resist participating in or assisting the spread of invective speech. There is no place at SFP for actions or communications that detract from that mission, that prevent the liberation of the soul, or that create an impression, real or perceived, that SFP's mission is disingenuous or may be compromised in any way.

I wish you all the best in 2013 and may the Blessings of St. Francis always be with you.

Sincerely,

Bro. Leonard
Principal
St. Francis Prep

BIEDERMANN HOENIG SEMPREVIVO
 a Professional Corporation
Philip C. Semprevivo, Jr.
60 East 42nd Street, Suite 660
New York, New York 10165
Telephone (646) 218-7560

*Attorneys for Defendants St. Francis Preparatory
School, Franciscan Brothers of Brooklyn and Brother
Leonard Conway*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ELIZABETH CUCINOTTA SORVILLO,
"JANE DOE," and MARK EVANGELISTA,

                             Plaintiffs,

        -against-

ST. FRANCIS PREPARATORY SCHOOL,
FRANCISCAN BROTHERS OF BROOKLYN,
BROTHER LEONARD CONWAY, and
VARIOUS MEMBERS OF THE ST. FRANCIS
PREPARATORY SCHOOL BOARD OF TRUSTEES,
WHOSE NAMES ARE CURRENTLY UNKNOWN
AND THUS DESIGNATED AS "JAMES DOE I-XXX,"

                           Defendants.
------------------------------------------------------------------X

13-cv-3357(SJ)(MG)

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT, upon the Declaration of Philip C. Semprevivo, Jr.,

dated September 27, 2013, and the accompanying Exhibits and Declarations, the Memorandum

of Law in support thereof, and the prior pleadings herein, Defendants ST. FRANCIS

PREPARATORY SCHOOL, FRANCISCAN BROTHERS OF BROOKLYN and BROTHER

LEONARD CONWAY, by their undersigned attorneys, move this Court, before the Honorable

Senior Judge Sterling Johnson, Jr., for an order dismissing Plaintiffs' Complaint in its entirety

pursuant to the Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) .

Dated:   New York, New York
          September 27, 2013

                            BIEDERMANN HOENIG SEMPREVIVO
                            a Professional Corporation

                            By: _____
                               Philip C. Semprevivo, Jr.
                               60 East 42nd Street, Suite 660
                               New York, New York 10165
                               (646) 216-7560
                               Philip.Semprevivo@lawbhs.com

To:    Kevin T. Mulhearn, Esq.
       KEVIN T. MULHEARN, P.C.
       60 Dutch Hill Road, Suite 8
       Orangeburg, New York 10962
       *Attorneys for Plaintiffs*

BIEDERMANN HOENIG SEMPREVIVO
a Professional Corporation
Philip C. Semprevivo, Jr. (PS 1526)
60 East 42nd Street, Suite 660
New York, New York 10165
Telephone (646) 218-7560

*Attorneys for Defendants St. Francis Preparatory
School, Franciscan Brothers of Brooklyn and Brother
Leonard Conway*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X     13-cv-3357(SJ)(MG)
ELIZABETH CUCINOTTA SORVILLO,
"JANE DOE," and MARK EVANGELISTA,

                          Plaintiffs,              **DECLARATION OF
                                                   PHILIP C. SEMPREVIVO,
        -against-                                  JR.**

ST. FRANCIS PREPARATORY SCHOOL,
FRANCISCAN BROTHERS OF BROOKLYN,
BROTHER LEONARD CONWAY, and
VARIOUS MEMBERS OF THE ST. FRANCIS
PREPARATORY SCHOOL BOARD OF TRUSTEES,
WHOSE NAMES ARE CURRENTLY UNKNOWN
AND THUS DESIGNATED AS "JAMES DOE I-XXX,"

                          Defendants.
-------------------------------------------------------------X

        Philip C. Semprevivo, Jr.,  an attorney duly admitted to practice law in the Courts of the

State of New York, hereby declares the following to be true under penalty of perjury:

        1.      I am an attorney admitted to the bar of this Court and am a member of

Biedermann Hoenig Semprevivo, a Professional Corporation, attorneys for Defendants ST.

FRANCIS PREPARATORY SCHOOL, FRANCISCAN BROTHERS OF BROOKLYN and

BROTHER LEONARD CONWAY (collectively "Defendants") and submit this Declaration in

support of Defendants' Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

2.  I am fully familiar with the facts and circumstances set out below based upon my personal knowledge and my review of the files maintained in my office.

3.  Attached as Exhibit "A" to this Declaration is a true and correct copy of the Complaint.

4.  Attached as Exhibit "B" to this Declaration is a true and correct copy of a letter from Plaintiffs' counsel announcing Jane Doe's agreement to forego her anonymity and be referred to by her legal name.

5.  Attached as Exhibit "C" to this Declaration is a true and correct copy of Brother Leonard Conway's Declaration.

6.  Attached as Exhibit "D" to this Declaration is a copy of the public Facebook page of Pauli Pastrami, "King of Illegal Meats", announcing Plaintiff Mooradian's role as a corporate lawyer.

7.  Attached as Exhibit "E" to this Declaration are copies of the public Facebook pages of Pauli Pastrami, "King of Illegal Meats", announcing the filming days in which Plaintiff Mooradian participated.

8.  Attached as Exhibit "F" to this Declaration is a true and correct copy of the Declaration of Brother William Boslet, OSF.

Dated:    New York, New York
          September 27, 2013

                              BIEDERMANN HOENIG SEMPREVIVO
                              a Professional Corporation

                              By: _____
                                    Philip C. Semprevivo, Jr.

                              60 East 42nd Street, Suite 660
                              New York, New York 10165
                              (646) 216-7560
                              Philip.Semprevivo@lawbhs.com

To:    Kevin T. Mulhearn, Esq.
       KEVIN T. MULHEARN, P.C.
       60 Dutch Hill Road, Suite 8
       Orangeburg, New York 10962

       *Attorneys for Plaintiffs*

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ AUG 14 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ELIZABETH CUCINOTTA SORVILLO,
FELICIA MOORADIAN (FORMERLY
KNOWN AS "JANE DOE"), and
MARK EVANGELISTA,

                    Plaintiffs,

                    v.

ST. FRANCIS PREPARATORY
SCHOOL, FRANCISCAN BROTHERS
OF BROOKLYN, BROTHER LEONARD
CONWAY, and VARIOUS MEMBERS
OF THE ST. FRANCIS PREPATORY
SCHOOL BOARD OF TRUSTEES
WHOSE NAMES ARE CURRENTLY
UNKNOWN AND THUS DESIGNATED
AS "JAMES DOE I-XXX,"

                    Defendants.
-----------------------------------------------------X

13 CV 3357 (SJ) (MDG)


MEMORANDUM
AND ORDER

A P P E A R A N C E S
KEVIN T. MULHEARN, P.C.
60 Dutch Hill Road, Suite 8
Orangeburg, NY 10962
By:    Kevin T. Mulhearn
*Attorney for Plaintiffs*

BIEDERMANN HOENIG SEMPREVIVO, P.C.
60 East 42nd Street, Suite 660
New York, NY 10165
By:    Philip C. Semprevivo , Jr.
       Elaine Nancy Chou
*Attorney for Defendants*

JOHNSON, Senior District Judge,

1

Plaintiffs are a former teacher and two former students of Defendant St. Francis Preparatory School ("St. Francis Prep"). Plaintiff Elizabeth Cucinotta Sorvillo brings a diversity claim against St. Francis Prep, the Franciscan Brothers of Brooklyn, Brother Leonard Conway, and various members of the St. Francis Preparatory School Board of Trustees ("Defendants"). Plaintiff Felicia Mooradian brings a sexual harassment claim and Plaintiff Mark Evangelista brings a discrimination claim against Defendants pursuant to 20 U.S.C. § 1681, et. seq. ("Title IX"). Plaintiffs Mooradian and Evangelista also bring negligent retention and supervision claims pursuant to New York State Law.

Pending before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as well as Plaintiffs' Cross-Motion to convert the Motion to a Motion for Summary Judgment.

## BACKGROUND

The facts are taken from the Complaint and, as is required on this motion, assumed to be true.

### A. Sorvillo

Plaintiff Sorvillo, a former teacher at St. Francis Prep from 2007 through 2011, taught business courses for the Computer Science and Business Department. (Compl. ¶ 20.) In the summer of 2010, Sovillo created a website "that would be a place where people could vent about anything that bothers them and get things off

2

their chest." (Compl. ¶ 22.) Sorvillo named the website "Burn and Rot in Hell!" which she claims was "a satirical and comical name because that's what her spouse used to say in jest when she was angry about something." (Compl. ¶ 24.) She alleges to have received approval from a number of school administrators and the school chaplain. (Compl. ¶¶ 25, 29, 31–33.)

The website launched on March 20, 2011. Sorvillo was suspended on March 24, 2011 (Compl. ¶¶ 38–39), and terminated on March 25, 2011. (Compl. ¶ 40.) Days later, on March 29, 2011, the principal of St. Francis Prep, Defendant Brother Leonard Conway ("Brother Leonard"), sent a letter to parents of the students which stated:

> About a week ago, [a] teacher launched a website designed to allow users to complain about various people and situations in their lives. Two of the categories people could comment on were teachers and students. This teacher mentioned the website in her classes and encouraged students to use it. Once we became aware of the website . . . , I met with the teacher and discussed with her that we found the site to be contrary to our mission and philosophy. She saw no problem with the site, chose not to take it down, and declined an opportunity to discuss the matter further. Because of her actions, she left me with no choice but to terminate her employment.

(Compl. ¶ 41.) Two years later, in about January 2013, Brother Leonard a sent a letter to alumni, parents, faculty members, administration, trustees, and others in the school community which stated:

> Nearly two years ago, SFP dismissed a teacher when she refused to discontinue her involvement in a public web site that encouraged bullying, and that contained content that is wholly contrary to and in conflict with the SFP mission. Over the Christmas vacation, I have received several disturbing emails from members of our

3

community stating that the content of numerous recent "blog" postings on that internet site are defamatory and have crossed over the line of free speech.

We are investigating those postings and evaluating all available responsive action with the assistance of legal counsel. Please know that SFP will pursue all appropriate remedial action in order to protect our mission and the members of our SFP community. I ask that you also remain mindful that, just as the First Amendment protects freedom of speech, it also ensures the free exercise of religion.

(Compl. ¶ 122, Ex. B.)  The letter than added: "Speech is not 'free' when its purpose is to bully, to convey hatred, or to spread malicious lies and unsubstantiated rumors." (Compl. ¶ 43.)

The Complaint states that "the over-all context in which the aforesaid statements were made suggested that, taking into consideration the communication as a whole, as well as its tone and purpose, Defendants were implying that their statements were based on facts unknown to those reading the letter that Plaintiff Sorvillo had 'crossed the line' into defamatory blog postings which were built upon, i.e., 'malicious lies.'" Compl. ¶ 123.)

B. Mooradian

Plaintiff Felicia Mooradian was a student at St. Francis Prep from 2005 to 2009. (Compl. ¶ 46.) She alleges that, during her tenure as a high school student at the school, she was subjected to sexual harassment by Brother Ben O'Reilly, her Spanish teacher. Mooradian alleges that St. Francis Prep was aware of a "long,

4

reported history of inappropriate behavior with female students." (Compl. ¶ 77.) Soon after Mooradian complained about Brother Ben's conduct, he was removed from the classroom. (Compl. ¶ 81.)

### C. Evangelista

Plaintiff Evangelista was a student of St. Francis Prep who graduated in 1986. (Compl. ¶ 93.) He alleges that a St. Francis Prep history teacher, Robert Stenger, hit him in the face "with great force." (Compl. ¶¶ 100, 102.) St. Francis Prep responded by moving Evangelista to another history class, and sending him a letter of apology. (Compl. ¶ 112.) He claims that Stenger thereafter targeted, discriminated against, sexually harassed, and physically abused him for being a boy. (Compl. ¶ 187.)

## DISCUSSION

### A. Motion to Dismiss Plaintiff Sorvillo's Defamation Claim

#### 1. Motion to Dismiss Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint "when 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claims which would entitle [her] to relief.'" Conley v. Gibson, 355 U.S. 41, 45–46 (1957); accord Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994). When considering a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most

5

favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

The complaint "does not need detailed factual allegations" but must "provide the grounds of . . . entitlement to relief" with "more than labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). The grounds for relief must be plausible. Id. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009); see also Twombly, 550 U.S. 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.") (citation omitted). Bald assertions are insufficient to state a claim under this standard. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including those "couched as factual allegation[s].").

### 2. Defamation Standard

Sorvillo claims that Defendants defamed her when sending out the January 2013 letter to alumni, parents, faculty members, administrators, and other members of St. Francis Prep. Specifically, Plaintiff Sorvillo claims that the "actionable element of the [January 2013] letter . . . is not the false opinion (i.e., that Plaintiff Sorvillo posted blog entries which were defamatory, with a purpose to bully, and/or

6

convey hatred, and/or to spread malicious lies and unsubstantiated rumors) itself, but the implication that the writer (Defendant Brother Leonard) knew certain facts, unknown to his audience, which supported the aforesaid opinion and were detrimental to the person about whom he was writing (Sorvillo)." (Compl. ¶ 120.) Plaintiffs clarify that the average reader of the letter "would take it to mean that Brother Leonard and St. Francis Prep were in possession of undisclosed facts which justified the opinion that Plaintiff Sorvillo's blog contained defamatory postings, and contained speech with a purpose to bully, to convey hatred, or to spread malicious lies and unsubstantiated rumors." (Compl. ¶ 121.) The January 2013 letter also indicates that St. Francis Prep considered taking legal action against Sorvillo for the allegedly defamatory postings. (Compl. ¶ 122.)

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." Idema v. Wager, 120 F.Supp.2d 361, 365 (S.D.N.Y. 2000). Under New York Law, in order to establish a defamation claim, a plaintiff must prove (1) a defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party, (4) by the defendant, (5) with injury to the plaintiff. See Boyd v. Nationwide Mutual Ins. Co., 208 F.3d 406, 409 (2d Cir. 2000); see also Albert v. Loksen, 239 F.3d 256, 265–66 (2d Cir. 2001).

Under both New York and federal law, statements of pure opinion are not actionable as defamation. See Gross v. New York Times Co., 82 N.Y.2d 146 (1993). A defamatory statement of fact is one that "tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace or induce an evil opinion of him in the

7

minds of right-thinking people to deprive him of their friendly intercourse in society." Rinaldi v. Holt, Rinehart & Winston, Inc., 42 N.Y.2d 369, 379 (1977). "[I]f the language is not of such a nature, that is, if it merely constitutes a general reflection on a person's character or qualities, it is not a matter of such significance and importance as to amount to actionable defamation even though it may be unpleasant, annoying, or irksome, or may subject the plaintiff to jests or banter so as to affect his feelings." N.Y. Jur. Defam. § 5.

"Whether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance." Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 177 (2d Cir. 2000) (quoting Aronson v. Wiersma, 65 N.Y.2d 592 (1985)). As the Second Circuit has explained, it is ultimately "the responsibility of the jury to determine whether the plaintiff has actually been defamed; however, a threshold issue for resolution by the court is whether the statement alleged to have caused plaintiff an injury is reasonably susceptible to the defamatory meaning imputed to it." Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997) (citing James v. Gannett Co., 40 N.Y.2d 415(1976)) (internal citation omitted). Words that are not "reasonably susceptible of defamatory meaning" are not actionable. Qureshi v. St. Barnabas Hosp. Ctr., 430 F.Supp.2d 279, 287 (S.D.N.Y. 2006) (citation omitted). Allegedly defamatory statements should be construed "as they would be commonly understood . . . in the context of their publication." Levin, 119 F.3d at 195 (citing Armstrong v. Simon & Schuster, Inc., 85 N.Y.2d 373 (1995)). "Challenged statements are not to be read in isolation, but must be perused as the average reader

8

would against the 'whole apparent scope and intent' of the writing." Celle, 209 F.3d
at 177 (quoting November v. Time Inc., 13 N.Y.2d 175 (1963)). "Allegedly
defamatory statements should be construed not with the close precision expected
from lawyers and judges but as they would be read and understood by the public to
which they are addressed." Krepps v. Reiner, 588 F.Supp.2d 471, 484 (S.D.N.Y.
2008) (citation omitted).

   The New York Court of Appeals instructs courts not to "strain to interpret [ ]
writings in their mildest and most inoffensive sense to hold them nonlibelous."
November, 13 N.Y.2d at 175 (citation and quotation marks omitted). At the same
time, a court should not "render statements actionable by giving them a strained or
artificial construction." Qureshi, 430 F.Supp.2d at 287 (quoting Dillon v. City of
New York, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)); see also Krepps, 588 F.Supp.2d at
484 ("[I]t is equally clear that courts should not strain to interpret statements as
defamatory.").

### 3.  Plaintiff Sorvillo's Defamation Claim Fails

   Plaintiff concedes "the actionable element of the letter. . . is not the false
opinion (i.e., that Plaintiff Sorvillo posted blog entries which were defamatory, with
a purpose to bully, and/or convey hatred, and/or to spread malicious lies and
unsubstantiated rumors)." (Compl. ¶ 120.)   Instead, Plaintiff argues that the
actionable element is "the implication that the writer (Defendant Brother Leonard)
knew certain facts, unknown to his audience, which supported the aforesaid opinion

9

and were detrimental to the person about whom he was writing (Sorvillo)." (Compl. ¶ 120.) "Defamation by implication is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." Armstrong v. Simon & Schuster, Inc., 85 N.Y.2d 373, 380–81 (1995).

Though the Second Circuit has not ruled on this direct point, other courts in this Circuit have adopting the Fourth Circuit's approach to defamatory implication claims. Biro v. Conde Nast, 883 F.Supp.2d 441, 446 (S.D.N.Y. Aug. 9, 2012). The test requires that Plaintiffs provide "an especially rigorous showing" that: "(1) the language may be reasonably read to impart false innuendo, and (2) the author intends or endorses the inference." Id. at 446. The alleged innuendo "may not enlarge upon the meaning of words so as to convey a meaning that is not expressed." Tracy v. Newsday, 5 N.Y.2d 134 (1959).

Applying the standard to each of Plaintiff Sorvillo's allegations of implied defamation, we find that none of the January 2013 letter's statements meet this standard. Plaintiff has failed to establish how the language of the letter may be read by a reasonable individual to impart false innuendo or intention for such with respect to Plaintiff individually. The references to Ms. Sorvillo, whether direct or implied, refer to the factual circumstances surrounding her termination, which Plaintiff herself does not claim are defamatory.

Brother Leonard, in the January 2013 letter, refers to a number of blog entries that are "defamatory," with a purpose to "bully," "convey hatred," or "spread malicious lies and unsubstantiated rumors." (Compl. at Ex. B.) However, such

10

statements refer to the blog postings, and do not speak directly or implicitly about Sorvillo individually. Plaintiff described the website she created, titled Burn and Rot in Hell, as "a place where people could vent about anything that bothers them and get things off their chest." (Compl.¶ 22) (emphasis added).   Put another way, alleging that Brother Leonard knew more information that established that Plaintiff Sorvillo's website contained defamatory blog postings does not defame Sorvillo as an individual.   In short, Plaintiff identifies nothing about the contents of the letter that defames her, even if the contents of the letter were untrue, and even if Defendant Brother Leonard knew them to be untrue. See, e.g., Ello v. Singh, 531 F. Supp. 2d 552, 579 (S.D.N.Y. 2007).

If the implication is that Sorvillo chose to post blog entries that were "defamatory, with a purpose to bully, and/or convey hatred, and/or to spread malicious lies and unsubstantiated rumors," the claim for defamation by implication would also fail. (Compl. ¶ 120.)   The letter's description of the blog entries as "defamatory," with a purpose to "bully," "convey hatred," or "spread malicious lies and unsubstantiated rumors" are statements of opinion regarding the substance of those entries.   Because opinions are not actionable, Plaintiff Sorvillo's defamation claims cannot proceed. Brahms v. Carver, No. 12-cv-5611, 2014 WL 3569347 (E.D.N.Y. July 18, 2014) ("[O]nly a provable statement of fact is actionable as defamation."); Gross, 82 N.Y.2d 146, 153 (1993) ("Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven

11

false, 'it follows that only statements alleging facts can properly be the subject of a defamation action.' ").

Despite drawing all reasonable inferences in Plaintiff's favor, Sorvillo cannot state a plausible defamation claim. The nature of the letter informing parents of a situation at the school and assuaging parents' fears of harm to their children, together with the fact that the statements were related to blog postings, and not directed at Sorvillo individually, establish that Defendant Brother Leonard's statements are, at best, protected opinion and cannot be the subject of a defamation action. The language of the January 2013 cannot be read to impart the false innuendo. As a result, the defamation claims against Defendants are dismissed.

B. <u>Motion to Dismiss Plaintiff Mooradian and Plaintiff Evangelista's Claims for Lack of Subject Matter Jurisdiction</u>

Federal district courts are courts of limited jurisdiction, and, at all times, are obligated to be assured of their subject matter jurisdiction over matters before them. <u>See, e.g., Durant, Nichols, Houston, Hodgson & Cortese–Costa P.C. v. Dupont</u>, 565 F.3d 56, 62–63 (2d Cir. 2009). In deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court generally accepts the alleged facts as true, although when necessary to resolve a factual dispute, may consider evidentiary submissions outside of the pleadings. <u>See Makarova v. U.S.</u>, 201 F.3d 110, 113 (2d Cir. 2000).

12

Because there is not diversity of citizenship, see 28 U.S.C. § 1332, federal subject matter jurisdiction for Plaintiffs Mooradian and Evangelista's claims are asserted pursuant to 28 U.S.C. § 1331, based upon their Title IX claims.

In relevant part, Title IX provides as follows:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education  program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a). Pursuant to 20 U.S.C. § 1687, Title IX applies to an entire education program or activity if "any part" of such program or activity "is extended Federal financial assistance." Pursuant to regulation, "recipient" for the purposes of Title IX is defined as follows:

> any public or private agency, institution or organization, or other entity, or any person, to whom Federal financial assistance is extended directly or through another recipient and which operates an educational program or activity which receives or benefits from such assistance, including any subunit, successor, assignee, or transferee thereof.

34 C.F.R. § 106.2(h) (emphasis added). "Entities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of [federal law]; entities that only benefit economically from federal assistance are not." NCAA v. Smith, 525 U.S. 459, 460 (1999).

Defendants argue that Plaintiffs Mooradian and Evangelista's Title IX claims must fail because St. Francis Prep received no federal funding in the operation of the school. Plaintiffs oppose this claim, admitting in their motion papers that St. Francis Prep does not directly receive federal funding. Instead, Plaintiffs argue that Title IX

jurisdiction attaches because "the school's students received federal financial aid." (Compl. ¶ 140, Defs.' Opp. at 21.) Thus, the threshold inquiry is whether the reach of Title IX is extended to Plaintiff Mooradian and Plaintiff Evangelista's claims.

On September 5, 2013, Magistrate Judge Marilyn D. Go ordered expedited discovery on the applicability of Title IX and liability, with responses to be submitted within three weeks of the Order. On September 6, 2013, Plaintiffs submitted requests for documents to determine the applicability of Title IX. Plaintiffs requested "all documents which reflect whether any federal financial aid has been given to any St. Francis Preparatory School students from 1984 to present." (Pls.' First Req. for Prod. of Docs., Reply Decl. of Philip C. Semprevivo, Jr., at Exhibit B, at 4.) Plaintiffs also requested:

> All documents which reflect whether St. Francis Preparatory School has ever received, participated in, or benefited from any federal grants, loans, or programs, including but not limited to any and all Elementary and Secondary Education Act ("ESEA") grants for any purposes or programs, including but not limited to "No Child Left Behind," funds for educationally deprived children, funds for library inventories, and funds for A-V equipment from 1984 to present.

(Pls.' First Req. for Prod. of Docs. at 4.)  Defendants responded on September 19, 2013. With respect to each of the above document requests, St. Francis Prep responded that it was "not in possession of any such documents." (Resp. to Pls.' First Req. of Docs., Reply Decl. of Philip C. Semprevivo, Jr., at Exhibit C,   at 4.) Plaintiffs did not oppose St. Francis Prep's responses. On July 28, 2014, the Court requested certification that discovery on the issue of Title IX liability was completed.

14

On July 30, 2014, Magistrate Judge Go held a conference in which all parties confirmed that discovery relating to this issue had concluded. Magistrate Judge Go then certified that discovery on the Title IX issue was complete.

On September 26, 2013, Defendants submitted a Declaration of Brother Leonard Conway which provides that St. Francis Prep "does not receive any federal financial aid in support of its operations. (Conway Decl. ¶ 2.)  Conway also certified that "the school's records confirm that St. Francis Prep does not, nor has it during the relevant time periods, participate or benefit from any federal grants; federal loans; federal funds; federal contracts; or federal programs for any purpose." (Conway Decl. ¶ 3.)

Here, Plaintiff Mooradian and Plaintiff Evangelista do not allege that the Defendant St. Francis Prep is a recipient of federal funding. Instead, the Plaintiffs argue that, because some students receive federal loans, the school may be imputed liability under Title IX.  The Plaintiffs cite no legal authority that supports this claim. Further, both Plaintiffs and Defendants confirm that no documents exist that establish that any students of St. Francis Prep received federal loans during the period in question.

Expedited discovery specifically on this point produced no evidence of any federal funding going to Defendant school or its students. See Buckley v. Archdiocese of Rockville Centre, 992 F.Supp. 586, 588–90 (E.D.N.Y. 1998) (in the absence of any factual allegations that the defendant received federal funds itself, or had any formal institutional affiliation with an entity that did, Title IX claim could

15

P-049

not be maintained).  As such, Plaintiffs attempts to confer jurisdiction of this Court through Title IX jurisdiction are without merit.

### C. State Law Claims

Having dismissed Plaintiffs' federal law claims, the Court declines to exercise jurisdiction on the remaining state law claims.

### CONCLUSION

Plaintiff Sorvillo's Defamation claim is DISMISSED for the reasons stated above. Plaintiff Mooradian and Plaintiff Evangelista's Title IX claims are DISMISSED for lack of subject matter jurisdiction.  Plaintiffs' Cross-Motion is DISMISSED as moot. The Clerk of the Court is directed to close the Case.

SO ORDERED.

Dated: August 12, 2014
      Brooklyn, New York

/s/ Sterling Johnson
Sterling Johnson, Jr., U.S.D.J

16

P-048

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ELIZBETH CUCINOTTA SORVILLO,                                    JUDGMENT
FELICIA MOORADIAN (FORMERLY                                     13-CV- 3357 (SJ)
KNOWN AS "JANE DOE"), and
MARK EVANGELISTA,

                         Plaintiffs,

          -against-

ST. FRANCIS PREPARATORY
SCHOOL, FRANCISCAN BROTHERS
OF BROOKLYN, BROTHER LEONARD
CONWAY, and VARIOUS MEMBERS
OF THE ST. FRANCIS PREPATORY
SCHOOL BOARD OF THE TRUSTEES
WHOSE NAMES ARE CURRENTLY
UNKNOWN AND THIS DESIGNATED
AS "JAMES DOE 1-XXX,"

                         Defendants.
-----------------------------------------------------------X

    A Memorandum and Order of Honorable Sterling Johnson Jr., United States District

Judge, having been filed on August 14, 2014, dismissing Elizabeth Cucinotta Sorvillo's defamation claim

for the reasons stated in the Court's Memorandum and Order; dismissing Felicia Mooradian and Mark

Evangelista's Title IX claims for lack of subject matter jurisdiction; and dismissing Plaintiffs' cross-

motion as moot; it is

    ORDERED and ADJUDGED that Elizabeth Cucinotta Sorvillo's defamation claim is

dismissed for the reasons stated in the Court's Memorandum and Order; that Felicia Mooradian and

Mark Evangelista's Title IX claims are dismissed for lack of subject matter jurisdiction; and that

Plaintiffs' cross-motion is dismissed as moot.

Dated: Brooklyn, New York                          Douglas C. Palmer
       August 15, 2014                             Clerk of Court

                                           by:     /s/ Janet Hamilton
                                                   Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

ELIZABETH CUCINOTTA SORVILLO,
"JANE DOE," and MARK EVANGELISTA,

**NOTICE OF APPEAL**

                              Plaintiffs,

           - against -                              **13 CV 3357(SJ)(MDG)**

ST. FRANCIS PREPARATORY SCHOOL,
FRANCISCAN BROTHERS OF BROOKLYN,
BROTHER LEONARD CONWAY, and
VARIOUS MEMBERS OF THE ST. FRANCIS
PREPARATORY SCHOOL BOARD OF TRUSTEES,
WHOSE NAMES ARE CURRENTLY UNKNOWN
AND THUS DESIGNATED AS "JAMES DOE I-XXX,"

                              Defendants.

-------------------------------------------------------x

NOTICE IS HEREBY GIVEN that, ELIZABETH CUCINOTTA SORVILLO, a
Plaintiff in the above-named case, hereby appeals to the United States Court of
Appeals for the Second Circuit from the final Judgment of this Court, dated August
14, 2014 (attached hereto as Exhibit A), which granted Defendants' Motions to
dismiss all of Plaintiff's claims in the Complaint, and all prior Orders of this Court,
including, without limitation, the Court's Opinion and Order dated August 12,
2014 (annexed hereto as Exhibit B).  Said Judgment was entered in this action by
the Clerk of Court on the 15th day of August, 2014 (Doc. No. 29).

September 15, 2014
Orangeburg, New York

KEVIN T. MULHEARN, P.C.

BY:  Kevin T. Mulhearn, Esq. (KM 2301)
*Attorneys for Plaintiff, Elizabeth Cucinotta Sorvillio*
60 Dutch Hill Road, Suite 15
Orangeburg, New York 10962
Phone No.: (845) 398-0361
Email: kmulhearn@ktmlaw.net

## <u>CERTIFICATION</u>

I, Kevin T. Mulhearn, Esq., the attorney for Plaintiff-Appellant, ELIZABETH CUCINOTTA SORVILLO, hereby certify and affirm that:

(1)     I have reviewed the Civil Docket Sheet for the SDNY matter: 13-CV-03357(SJ), and

(2)     The foregoing Civil Docket Sheet for this case, as of November 30, 2014, is true and accurate.

Date: December 1, 2014

KEVIN T. MULHEARN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ELIZABETH CUCINOTTA SORVILLO,

**AFFIDAVIT OF SERVICE**

Plaintiff-Appellant,

- against -

**14-3417-CV**

ST. FRANCIS PREPARATORY SCHOOL,
FRANCISCAN BROTHERS OF BROOKLYN,
BROTHER LEONARD CONWAY, and
VARIOUS MEMBERS OF THE ST. FRANCIS
PREPARATORY SCHOOL BOARD OF TRUSTEES,
WHOSE NAMES ARE CURRENTLY UNKNOWN
AND THUS DESIGNATED AS "JAMES DOE I-XXX,"

Defendants-Respondents.
----------------------------------------------------------------X

SALLY RILEY, being duly sworn, says: I am not a party to the action, am over 18 years
of age and reside in Chester, New York 10918.

On December 2, 2014, I served a true copy of the Appendix (A-1 through A-82), and
Brief on Appeal, dated December 1, 2014, in the following manner:

By mailing the same in a sealed envelope, via Overnight Express Mail, with postage
prepaid thereon, in a post-office or official depository of the U.S Postal Service within
the State of New York, addressed to the last known address of the addressee as indicated
below (with a courtesy copy also sent via email):

Philip C. Semprevivo, Jr.
BEIDERMANN HOENIG SEMPREVIVO, P.C
60 East 42nd Street, Suite 660
New York, New York 10165
(646) 218-7621
Email: Phil.semprevivo@lawbhs.com

*Attorneys for Defendants-Respondents*

SALLY RILEY

Sworn to before me on this
2nd day of December, 2014

NOTARY PUBLIC

KEVIN T MULHEARN
Notary Public, State of New York
No. 02MU5047687
Qualified in Rockland County
Commission Expires August 7, 20__